(932 P.2d 1046)

No. 75,853

MARY ANN HEANY, *Appellant,* v. LARRY W. NIBBELINK, M.D., *Appellee.*

Opinion filed February 28, 1997.

*Larry G. Michel,* of Kennedy, Berkley, Yarnevich & Williamson, Chartered, of Salina, for appellant.

*Scott K. Logan, M. Bradley Watson,* and *Jennifer B. Hense,* of Logan & Logan, L.C., of Prairie Village, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and ROGG, S.J.

MARQUARDT, J.: Mary Ann Heany appeals from the district court's order granting summary judgment to Larry W. Nibbelink, M.D., on her medical malpractice claim.

On January 5, 1992, Heany gave birth to a healthy baby delivered by Dr. Nibbelink at Bethany Medical Center in Kansas City, Kansas.

Dr. Nibbelink, who practices gynecology and obstetrics, testified that after a delivery, he always examines the vagina, cervix, and placenta for abnormalities. The pathology report done on Heany's placenta stated that the "maternal surface has a few small lacerations but when these are reconstituted, all of the cotyledons appear to be present."

Heany testified that she made several phone calls to Dr. Nibbelink's office in the weeks following her delivery, complaining of bleeding and pain. Dr. Nibbelink does not have any record of Heany's phone calls until March 19, 1992. On that date, one of the other doctors in Dr. Nibbelink's office took Heany's call and recommended that she come to the office for a pelvic sonogram and pregnancy test.

Dr. Nibbelink's notes from March 27, 1992, state that Heany's sonogram "suggest retained products of conception." However, Dr. Nibbelink testified that only a biopsy would show whether what was seen on the sonogram was actually "retained products of conception or whether [it was] something else." Retained products of conception is where some portion of the pregnancy, typically placenta-like tissue or fetal tissue, remains in the uterus. When this occurs, it can cause bleeding and an increased risk of infection.

Dr. Nibbelink performed a hysteroscopy and dilation and curettage on Heany. Dr. Nibbelink also removed some tissue by sharp curettage for pathological evaluation. The pathology report of this tissue did not indicate that Heany's complaints were caused by retained products of conception. Based on this report, Dr. Nibbelink concluded that Heany's bleeding was caused by "dysfunctional uterine bleeding associated with her menstrual cycle returning to normal."

Dr. Nibbelink testified that postpartum bleeding anywhere from 4 to 8 weeks would not be considered abnormal; however, "[i]f the bleeding persists an additional month [beyond the 8 weeks], then we begin to evaluate and wonder why it's happening."

On October 19, 1992, Heany consulted Dr. John W. Calkins concerning her treatment by Dr. Nibbelink. Dr. Calkins testified that there are numerous causes of postpartum bleeding.

In a letter to Heany's counsel, Dr. Calkins said, "I do not believe either [adenomyosis or pelvic congestion] are directly related to [Heany's] retained products of conception. However, I do feel that the prolonged bleeding and discomfort that [Heany] experienced after her delivery clearly are related to that condition and could have been dealt with more expeditiously."

In his affidavit, Dr. Calkins stated:

"I am one of the treating physicians of Mary Ann Heany. I have never been retained as an expert witness, nor have I ever agreed to act as an expert witness in this matter. Further, I have advised counsel for both parties in the past that I would give testimony as a treating physician, which I did in a deposition, but that I will not render any opinions as to whether or not the standard of care was met in this case."

In its memorandum decision, the district court stated that Dr. Calkins was listed as both a treating physician and an expert witness. However, Heany's witness list does not designate any of the witnesses as expert or nonexpert. During his deposition, Dr. Calkins was not asked to give an opinion on whether Dr. Nibbelink deviated from the standard of care, and Heany did not have another witness who would give an opinion on the standard of care issue.

In Heany's petition, she alleges:

"6. Following delivery, Dr. Nibbelink failed to diagnose that Mary Ann had retained products of conception. Despite continued bleeding and pain, as well as her complaints to him, Dr. Nibbelink did not discover that Mary Ann had retained products until almost three months postpartum."

Heany contended that Dr. Nibbelink's treatment of her failed to meet the standard of care and constituted negligence.

Dr. Nibbelink filed a motion for summary judgment, arguing that Heany had failed to present sufficient expert testimony to support her claim. The district court granted Dr. Nibbelink's motion.

Heany argues that the district court erred in concluding that she did not present sufficient expert testimony to support her claim for medical malpractice.

Summary judgment is appropriate when the documents on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c); see *Smith v. Milfeld*, 19 Kan. App. 2d 252, 254, 869 P.2d 748, *rev. denied* 253 Kan. 861 (1993) (reversing district court's granting of summary judgment in medical malpractice case).

The district court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party opposing the motion. *Boulanger v. Pol*, 258 Kan. 289, 295, 900 P.2d 823 (1995). Similarly, "[i]n reviewing a summary judgment, an appellate court must read the record in the light most favorable to the party who opposed the motion." *Morriss v. Coleman Co.*, 241 Kan. 501, 502, 738 P.2d 841 (1987).

Summary judgment is a decision made as a matter of law, and this court's review of that decision is unlimited. *Security Benefit Life Ins. Corp. v. Fleming Companies, Inc.*, 21 Kan. App. 2d 833, 836, 908 P.2d 1315 (1995), *rev. denied* 259 Kan. 928 (1996).

In order to prevail in a medical malpractice action in Kansas, a plaintiff must prove the following three elements: "(1) that a duty was owed by the physician to the patient; (2) that the duty was breached; and (3) that a causal connection existed between the breached duty and the injury sustained by the patient." *Wozniak v. Lipoff*, 242 Kan. 583, 587, 750 P.2d 971 (1988). Every physician has the duty to use reasonable care and to exercise that reasonable degree of learning, skill, and experience which is ordinarily possessed by other physicians in the same or similar locations. *Durflinger v. Artiles*, 234 Kan. 484, 489, 673 P.2d 86 (1983), *overruled on other grounds Boulanger v. Pol*, 258 Kan. 289; see *Roesch v. Clarke*, 861 F. Supp. 986, 991 (D. Kan. 1994).

In a medical malpractice action, expert testimony is ordinarily required to establish the standard of care required of physicians in that particular area of medicine. See *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988). Expert testimony is also ordinarily required to show that the doctor breached this

standard of care. See *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978).

However, there is a common knowledge exception to this requirement that applies "where the lack of reasonable care . . . is apparent to the average layman from common knowledge or experience." *Bacon*, 243 Kan. at 307; see *Webb*, 223 Kan. at 490.

The record establishes that Heany suffered from extended postpartum bleeding. Dr. Calkins testified that he was not sure what was causing Heany's symptoms. None of Heany's complications fall within the common knowledge exception to the requirement of expert testimony in medical malpractice cases. See *Webb*, 223 Kan. at 490.

The record does contain Dr. Calkins' letter stating that the retained products of conception likely caused Heany's bleeding and should have been dealt with more expeditiously. Dr. Calkins' letter vaguely criticizes Dr. Nibbelink's treatment of Heany; however, the letter does not specify a standard of care that is required in cases in this particular area of medicine and does not state that Dr. Nibbelink's treatment fell below any specified standard of care. See *Webb*, 223 Kan. at 490. Dr. Calkins never stated in his deposition that Dr. Nibbelink's treatment of Heany fell below the standard of care. In fact, Heany had no expert testimony on the issues of standard of care or causation regarding Dr. Nibbelink's treatment of her, and the deadline for naming such experts had passed prior to Dr. Nibbelink filing his motion for summary judgment.

We find that Heany did not present sufficient expert testimony to establish that any of her complications stemmed from a deviation of care by Dr. Nibbelink.

Heany argues that the district court erred by not granting her motion to compel, which sought access to the claim file of Dr. Nibbelink's liability insurance carrier.

On September 15, 1993, Heany's counsel wrote to Dr. Nibbelink requesting copies of Heany's medical records. At that time, the Kansas Medical Mutual Insurance Company (KaMMCO) provided Dr. Nibbelink's professional liability insurance. On September 30, 1993, Marta Fisher Linenberger, a Topeka attorney, wrote the following letter to KaMMCO:

"You advised me today that a potential claim may be filed against Larry Nibbelink, M.D. As we discussed, I would like [KaMMCO] to investigate this matter and I request you or your designee to obtain records as necessary, evaluate the same, interview witnesses involved in the matter, and obtain expert evaluations as to negligence, causation, and damages for my evaluation and use."

On November 15, 1993, Heany's counsel sent a demand letter to Dr. Nibbelink, stating a claim against Dr. Nibbelink for negligence. On December 30, 1993, Heany filed suit against Dr. Nibbelink, and the case was later dismissed without prejudice. On September 23, 1994, Heany filed the present action.

Heany filed a motion for discovery which requested that Dr. Nibbelink produce the complete claim file of any insurance company that had coverage for her claim. Dr. Nibbelink identified KaMMCO as an insurance company that might be liable under Heany's claim. However, Dr. Nibbelink objected to producing the KaMMCO claim file, stating that "[t]he claim file contains work product and confidential information."

Heany filed a motion to compel, requesting that the district court order Dr. Nibbelink to provide her with a full and complete copy of KaMMCO's claim file as it existed prior to December 30, 1993, the date that she first filed suit. The district court denied Heany's motion. Heany filed a motion to reconsider, but the district court declined to change its ruling.

Parties may obtain through discovery any matter that is relevant to the pending action unless the information or thing sought is privileged. K.S.A. 60-226(b)(1).

K.S.A. 60-226(b)(3) governs work product protection and provides in part:

"Subject to the provisions of subsection (b)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subsection (b)(1) *and prepared in anticipation of litigation or for trial* by or for another party or by or for that other party's representative (including such other party's attorney, consultant, surety, indemnitor, insuror or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of such party's case and that such party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect

against disclosure of the mental impression, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation."

The discovery issue in this case is whether the claim file was prepared in anticipation of litigation by or for Dr. Nibbelink or by or for his representative.

To qualify for work product protection, a document or thing must be "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." K.S.A. 60-226(b)(3).

In *Henry Enterprises, Inc. v. Smith*, 225 Kan. 615, 623, 592 P.2d 915 (1979), the court held that

"the initial investigation of a potential claim, made by an insurance company prior to the commencement of litigation, *and not requested by or made under the guidance of counsel,* is made in the ordinary course of business of the insurance company, and not 'in anticipation of litigation or for trial' as those terms are used in K.S.A. 60-226(b)(3)." (Emphasis added.)

See *Independent Mfg. Co. v. McGraw-Edison Co.*, 6 Kan. App. 2d 982, 985-86, 637 P.2d 431 (1981).

This case can be distinguished from *Henry* in that, here, the initial investigation or claim file was requested by counsel. However, the question remains as to whether the attorney who requested the investigation was a "representative" of Dr. Nibbelink. See K.S.A. 60-226(b)(3). The burden of proving the documents are protected is on the party asserting the protection. See Leatherman, *Discovery of Insurance Adjustor's Files Under 60-226(b)(3),* 17 J.K.T.L.A. 18, 19 (September 1993) (citing 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024 [1970]).

In denying Heany's motion for rehearing, the district court concluded:

"Plaintiff's attorney contacted the doctors requesting medical records. The company contacted an outside attorney and requested directions on what should be done. The company then followed the directions of the attorney. Although it might have been better, or at least easier on this court, had the attorney been the present one before the court, the work was at the direction of an attorney hired to protect the interest of the insured at that time."

*Henry*, 225 Kan. at 619, quotes from 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024, as follows : " 'It has always

been clear that an attorney retained by an insurance company *to represent a party* enjoys the same immunity as an attorney retained directly by the party.' " (Emphasis added.)

Linenberger, an attorney, was acting on behalf of the insurance company in directing an investigation of a potential claim.

The district court did not abuse its discretion in ruling that Heany was not entitled to the KaMMCO claim file. K.S.A. 60-226(b)(3).

Affirmed.