No. 77,959

GERALD D. HARE, *Appellant*, v. KRISTOPHER K. WENDLER, M.D. *et al.*, *Appellees.*

(949 P.2d 1141)

Opinion filed December 12, 1997.

*Carston C. Johannsen,* of Gould Law Offices Chtd., L.L.C., of Lenexa, argued the cause, and was on the brief for appellant.

*Paul W. Rebein,* of Shook, Hardy & Bacon, L.L.P., of Overland Park, argued the cause, and *Kenneth J. Reilly,* of the same firm, was with him on the brief for appellee Kristopher K. Wendler, M.D.

*Victoria A. Henges,* of Blackwell Sanders Matheny Weary & Lombardi, L.L.P., of Overland Park, argued the cause, and *Roger W. Warren,* of the same firm, was with her on the brief for appellee The Kansas Psychiatric Institutes, Inc.

The opinion of the court was delivered by

SIX, J: This is a summary judgment medical malpractice personal injury case. The primary focus is on the absence of expert testimony on causation and damages and the application of the common knowledge exception to the expert testimony requirement. Gerald W. Hare appeals from judgments granted to defendants Kristopher K. Wendler, M.D. and The Kansas Psychiatric Institutes, Inc., d/b/a "The Kansas Institute" (TKI). Hare's petition alleged that Wendler, a psychiatrist, had engaged in sexual relations with Hare,

his patient at TKI, a psychiatric hospital. The district court found that Hare had offered no expert testimony on causation or damages and that such expert testimony was required. Our jurisdiction is under K.S.A. 20-3018(c) (transfer from the Court of Appeals on our motion).

We consider two questions in affirming summary judgment: was the district court correct in ruling (1) expert testimony on causation or damages was needed to move this case beyond summary judgment, and (2) the summary judgment motions were ripe for decision, despite an unresolved motion to compel discovery?

We note that the district court's requirement that Hare present expert testimony on damages is not established in our case law. Kansas law does not require that a plaintiff must present expert testimony on a claim for damages. However, Hare's failure to present expert evidence on causation is dispositive.

## FACTS

Hare, an adult male, was admitted to TKI in 1991 for psychiatric care and treatment. He alleged that during his stay at TKI, Dr. Wendler, without his consent, touched Hare's genital area, forced him to perform oral sex, and sodomized him. Also, when Hare was readmitted in 1993, Hare alleged that Dr. Wendler negligently terminated Hare's psychiatric treatment. The petition asserted (1) negligent treatment by Dr. Wendler, (2) vicarious negligence against TKI, and (3) TKI's negligent retention and supervision of Dr. Wendler.

Dr. Wendler denied negligence and sexual contact with Hare. TKI denied negligence and also contended that Dr. Wendler was an independent contractor. The district court entered a discovery order requiring Hare to designate his expert witnesses, including the experts' opinions. The order also required discovery to be completed on or before February 28, 1996.

Opposing counsel was notified by letter dated October 3, 1995, that Hare had designated Dr. William Logan, M.D., as his expert witness. The letter said that it might be supplemented in the future and generally described the opinions that Dr. Logan was to render on the negligent treatment. "Dr. Logan will also testify that the

aforementioned misdiagnosis and failure to treat caused or contributed to cause longstanding emotional injury for Mr. Hare."

Defendants' counsel deposed Dr. Logan on November 27, 1995. Dr. Logan said that he had been asked to look at this case only from the standard of care standpoint. Dr. Logan had never examined Hare. He said that he would prefer not to discuss causation or damage issues without examining Hare. Later in his deposition, Dr. Logan was asked the following question:

"Q. I noticed that Mr. Johannsen's letter to the defense attorneys in this case [the October 3, 1995, letter] indicates in his final paragraph that you'll be addressing issues of aggravation of condition, permanency of injury and future costs of medical care, but I take it, really, since you don't have the prior or subsequent medical records and because you have not interviewed Mr. Hare, you're not going to be addressing any of those topics?"

He answered:

"A. Just don't have the tools to form the basis of opinion on those areas. All you can say generally is —
"Q. You know what, you've answered my question.
"A. Okay."

Dr. Logan did opine that Dr. Wendler's engaging in any kind of sexual contact with Hare would have been a deviation from the standard of care. Dr. Logan also believed that to a certain extent Dr. Wendler's handling of the termination issue during Hare's 1993 hospitalization fell beneath the standard of care. Dr. Logan was once again asked during his deposition if he had any other opinions, and he stated he did not. The following exchange between Dr. Logan and counsel for Dr. Wendler then took place:

"Q. And you understand that this was the date upon which we were to be given the opportunity to depose you in connection with the opinions you hold in this case pursuant to the Court's direction; correct?
"A. Right. And it's also my general understanding if there is other work, there would also be followed—or other opinions, you will be so notified.
"Q. I don't know about that. Today is the day I get to depose you and today is the day you get to express the opinions. This is the Court's designated deadline.
"A. As of this day, this is what I have done and this is what my opinions are."

On March 4, 1996, Hare filed a motion to amend pleadings, seeking to add a claim for punitive damages. TKI, in opposing the

motion, attached a privilege log to its response brief. The privilege log listed documents concerning complaints received against Dr. Wendler during 1992 and 1993 involving other patients, Hare's February 1993 complaint, and internal investigations. Hare filed a motion to compel discovery, based primarily on TKI's assertion of various privileges against disclosure.

The pretrial order, filed April 8, 1996, referred to the deposition of Dr. Logan as being completed. Contemplated discovery listed the depositions of defendants' expert witnesses. A jury trial was set for June 17, 1996.

Dr. Wendler and TKI filed motions for summary judgment on April 10, 1996. Both defendants argued that Hare's petition should be dismissed for failure to offer any expert opinion testimony as to damages and causation (TKI also asserted additional grounds).

The journal entry of the May 2, 1996, telephone conference with the court, which set various motions for hearing, provided in part:

"Further, the Court finds that the discovery disputes that are still outstanding do not affect the issues relating to plaintiff's expert nor the issues relating to Dr. Wendler's status as an independent contractor. The Court also finds that plaintiff's counsel agreed that Dr. Wendler was an independent contractor for TKI *and that the parties further agreed that discovery regarding plaintiff's expert has closed.*" (Emphasis added.)

Hare's response to the motions for summary judgment included his affidavit, which said that he was seen by Dr. Logan on April 22, 1996. The response also included a letter dated May 7, 1996, from Hare's counsel supplementing counsel's October 3, 1995, letter. The May 7, 1996, letter added that Dr. Logan would testify as to additional opinions, which were listed. However, the response included no additional statements from Dr. Logan himself.

The district court granted defendants' motions for summary judgment and decided that the other pending motions were moot. In the TKI summary judgment journal entry, the district court found "that the causation of damages alleged by plaintiff, such as increased emotional and psychiatric difficulty, would not be apparent to a layman under the factual circumstances of this case. Therefore, plaintiff is required to have expert testimony to prove the essential elements of causation and damages." The district

court concluded "that there is an absence of essential elements of plaintiff's case and TKI is entitled to summary judgment for the failure of plaintiff to come forward with anything of evidentiary value establishing the essential elements of causation and damages." The district court decided that Hare's counsel's October 3, 1995, letter, even if construed as an interrogatory response, had no evidentiary or probative value. The journal entry awarding summary judgment to Dr. Wendler contained similar findings and conclusions.

A motion for reconsideration was filed, which included another affidavit from Hare. However, nothing new from Dr. Logan was included. The district court denied the motion to reconsider, and Hare's appeal leads to our discussion.

## DISCUSSION

The blunt finality of summary judgment requires that we initially record Hare's background, which sets the stage for our analysis of this case.

### Hare's Background

In Hare's deposition, he said that he suffered from multiple personality disorder. He has as many as seven alter personalities. He described his childhood sexual abuse from his father beginning at age 5, and from his uncle beginning at age 9 or 10, including oral sex and anal intercourse. His father and uncle would tell him such things as, "Don't tell anybody, I'll kill you," or, "No one will believe you, you are just a kid." Hare stopped the sexual contact with his father at age 15 when he beat his father with a baseball bat. Hare also had a sexual relationship with a male cousin during junior high. A postman sexually abused Hare when Hare was in grade school. Hare had sexual relationships with a couple of male students while in high school. He spent a year and a half in the Marines. During that time (age 18), he became addicted to heroin and also moved into male prostitution. He would be picked up three or four times a night. Sometimes he engaged multiple partners. Hare used marijuana almost every day as a senior in high school. By the time he

was discharged from the Marines, he was an alcoholic and a drug addict.

## Hare's Hospitalization at TKI

Hare described his 1991 hospitalization at TKI for treatment of depression. He was diagnosed with multiple personality disorder, post-traumatic stress disorder, major depression, and psychogenic amnesia. Hare did not recall any sexual contact with Dr. Wendler during his 1991 TKI hospitalization until 1993, when he was again hospitalized there. However, upon seeing Dr. Wendler in 1993, Hare recalled Dr. Wendler's 1991 sexual activities. According to Hare's recollection, Dr. Wendler, in 1991, groped through Hare's jeans and said, "We'll have to try this some day." As the sessions continued, Hare alleged, Dr. Wendler would hypnotize Hare and Hare would perform oral sex on him, or Dr. Wendler would perform anal sex on Hare; anal sex would occur during the morning visits and oral sex took place during the afternoon. According to Hare, after the sexual encounters, Dr. Wendler would say, "You can't tell anyone, you know, because you're crazy," or, "If you say anything, I'll kill you." Dr. Wendler would tape over the peephole in the therapy room door or place two chairs in front of the door. He kept the tape inside the sleeve of his jacket.

During his 1993 hospitalization at TKI, Hare did not have any sexual encounters with Dr. Wendler. Dr. Wendler went on administrative leave because he was undergoing an investigation concerning allegations of sexual misconduct with female patients. Hare was in the TKI smoking room when he heard two female patients say that Dr. Wendler was in trouble for something. Then, Hare saw Dr. Wendler in the hall and began to recall the 1991 sexual encounters.

## Summary Judgment

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. K.S.A. 60-256(c). Our standard of review is de novo. See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, Syl. ¶ 2, 863 P.2d 355 (1992). The essential facts here are

documented in the parties' summary judgment submissions. Our standard in reviewing summary judgment is well established. See, *e.g., Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

## Causation

Hare advances a claim of medical malpractice, requiring the same elements of proof as in any negligence action. *Sharples v. Roberts*, 249 Kan. 286, 294, 816 P.2d 390 (1991).

We have described the plaintiff's duty to show causation in medical malpractice cases, stating there must be a causal connection between the negligent act and the injury or that the act caused or contributed to the injury. *Sharples*, 249 Kan. at 295. Expert testimony is ordinarily required to show that the doctor breached the standard of care. *Heany v. Nibbelink*, 23 Kan. App. 2d 583, 586-87, 932 P.2d 1046 (1997).

We said in *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988):

"Negligence is never presumed, and may not be inferred merely from a lack of success or an adverse result from treatment. [Citation omitted.] The plaintiff in a medical malpractice case bears the burden of showing not only the doctor's negligence, but that the negligence caused the injury. [Citation omitted.] Except where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation. [Citations omitted.]"

The parents and child in *Bacon* sued the hospital, the mother's physician, and the pediatrician, alleging that negligence after delivery caused the child's cerebral palsy. We affirmed summary judgment in favor of defendants, holding that plaintiffs presented no expert evidence that the hospital, the mother's physician, or the pediatrician in the hour following delivery caused the child's cerebral palsy.

In *Sharples*, the patient claimed that his physician's failure to diagnose the existence of a large kidney stone, order the appropriate tests, and refer him soon enough to a urologist, caused a kidney loss. We affirmed summary judgment for the physician and

agreed with the district court's analysis of the testimony of Dr. Simon, the plaintiff's expert. Although Dr. Simon thought that defendant physician had departed from the acceptable standard of care, he could not say that the departure caused or contributed to the injury. Dr. Simon's testimony fell short of the degree of medical probability or certainty required to support the necessary element of causation.

Even when there is no factual dispute about what the treating physician did or failed to do, questions of causation in medical malpractice cases are often complex. For example, in *Webb v. Lungstrum*, 223 Kan. 487, 491-92, 575 P.2d 22 (1978), the causation issue (although we did not address it) involved whether loss of sensation in plaintiff's left hand was caused by the original injury, presence of a metal object in the median nerve, or the operation. Plaintiff's expert could not address the causation question with "reasonable certainty." 223 Kan. at 491-92. See generally Annot., Necessity of Expert Evidence to Support an Action for Malpractice Against a Physician or Surgeon, 81 A.L.R.2d 597.

Hare argues that the district court erred in concluding that there was no expert evidence on causation. Hare claims Dr. Logan said only that he could not offer any opinion until he examined Hare. Hare references his attorney's two letters to opposing counsel outlining the causation opinions that Dr. Logan would offer. However, Hare offers no additional statements from Dr. Logan.

Despite Hare's attorney's letters about Dr. Logan's opinions, at the time Dr. Logan was deposed and was asked for his opinions, he offered none on causation. He said he would need to examine Hare and additional medical records. He did not indicate during his deposition that he had been, or would be, asked to examine Hare. Under the terms of the discovery order, Hare had the burden to disclose his expert's opinions to opposing counsel. See K.S.A. 60-226(b)(4)(A)(i).

Hare argues that defense counsel, though aware Dr. Logan was going to testify on causation, never followed up to conclude Dr. Logan's deposition. Hare misreads what happened. Defense counsel asked Dr. Logan for his opinions, and Dr. Logan made clear that his only opinion concerned breach of the standard of care.

Hare contends that counsel's October 3, 1995, and May 7, 1996, letters should be treated as answers to interrogatories under K.S.A. 60-226(b)(4)(A)(i). However, as the district court concluded: "Even if this letter was construed as an interrogatory response, it could never be offered and received in evidence as relevant to the question of causation." The letters are hearsay, at best, and are signed by Hare's counsel. They are neither signed by a party nor signed under oath. The letters do not satisfy the requirements of K.S.A. 60-233(a) (written interrogatories).

## The Common Knowledge Exception

Hare advances the common knowledge exception as his trump card on summary judgment. We have recognized the common knowledge exception in medical malpractice cases.

"There is a common knowledge exception to the rule requiring expert medical testimony in malpractice cases. This common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally. [Citations omitted.]" *Webb,* 223 Kan. at 490.

*Webb* focused on an orthopedic surgeon's failure to call in advance for an x-ray in treating a tendon and nerve injury in the forearm. The defendant surgeon failed to discover a small metal fragment. We held the absent x-ray was not so obvious that the omission fell within the common knowledge exception. 223 Kan. at 491.

The common knowledge exception was found not applicable and expert medical evidence was required in the following cases: *Bacon,* 243 Kan. 303; *Webb,* 223 Kan. 487; *Collins v. Meeker,* 198 Kan. 390, 424 P.2d 488 (1967); *Heany,* 23 Kan. App. 2d 583; *St. Francis Regional Med. Center, Inc. v. Hale,* 12 Kan. App. 2d 614, 752 P.2d 129 (1988); *Crooks v. Greene,* 12 Kan. App. 2d 62, 736 P.2d 78 (1987); and *Crowley v. O'Neil,* 4 Kan. App. 2d 491, 609 P.2d 198, *rev. denied* 228 Kan. 806 (1980). The exception was applied in *McKnight v. St. Francis Hosp. & School of Nursing,* 224 Kan. 632, 585 P.2d 984 (1978); *Hiatt v. Groce,* 215 Kan. 14, 523 P.2d 320 (1974); *Karrigan v. Nazareth Convent & Academy, Inc.,* 212 Kan. 44, 510 P.2d 190 (1973); *Rule v. Cheeseman, Executrix,*

181 Kan. 957, 317 P.2d 472 (1957); and *Bernsden v. Johnson,* 174 Kan. 230, 255 P.2d 1033 (1953).

Hare argues that under the common knowledge exception, expert testimony was not necessary because a psychiatrist having sexual relations with a patient is obviously below the standard of reasonable care. However, the standard of care is not at issue here.

The causation question is complex, as it is in many medical malpractice cases. Hare did not report Dr. Wendler's alleged 1991 sexual contact until his 1993 hospitalization. Hare admitted to a promiscuous lifestyle. His past included prostitution and drug and alcohol abuse, as well as sexual abuse. He was diagnosed with many mental disorders at the time of his 1991 hospitalization at TKI. Hare's preexisting mental problems are linked to the causation issue.

In arguing that the common knowledge exception should apply here, Hare cites *Richard H. v. Larry D.,* 198 Cal. App. 3d 591, 243 Cal. Rptr. 807 (1988), and *Blackowiak v. Kemp,* 546 N.W.2d 1 (Minn. 1996). Both cases are distinguishable. *Richard H.* involved a demurrer to a malpractice complaint, and, consequently only addressed whether a cause of action was pleaded. It did not address questions on the quality of causation evidence needed to avoid summary judgment. *Blackowiak* did not involve a malpractice action or the question of causation evidence.

Hare compares his claim to the statutory definition of aggravated criminal sodomy in K.S.A. 21-3506. He asserts that because Dr. Wendler's alleged conduct fits the statutory definition, we should assume that injury from such criminal conduct is sufficient to overcome summary judgment. K.S.A. 21-3506 does not reference any presumption of injury.

Hare contends that difficulty in determining damages should not entitle Dr. Wendler to summary judgment, citing *Cott v. Peppermint Twist Mgt. Co.,* 253 Kan. 452, Syl. ¶ 5, 856 P.2d 906 (1993) ("The inability to calculate damages with absolute exactness does not render them too uncertain to preclude their award."). In *Cott,* two bar customers sustained severe internal injuries after ingesting cocktails that contained a highly toxic dishwashing liquid. Causation was not an issue. The damages in *Cott* were obviously caused

by ingestion of the toxic liquid. The uncertainty concerned how to calculate future medical expenses. Here, the question is what, if any, damages did Hare suffer because of Dr. Wendler's alleged conduct? Concern about calculation of damages is premature.

Hare relies on the Restatement (Second) of Torts § 433B(2) (1965), which addresses the apportionment of harm and the burden of proof when tortious conduct of two or more actors combine. He reasons that Dr. Wendler and TKI bear the burden of proof to establish other causes for Hare's mental problems.

Hare's § 433(B)(2) argument misses the issue, *i.e.*, the question of whether Hare's claims fail because he has not presented any expert evidence on causation. The issue of burden of proof is irrelevant to that threshold question.

When the motions for summary judgment were filed, Hare had the burden to provide the necessary expert evidence. He must actively come forward with something of evidentiary value to establish a disputed material fact. Evidentiary value means a document or testimony must be probative of Hare's position on a material issue of fact. See *Kastner v. Blue Cross and Blue Shield of Kansas, Inc.*, 21 Kan. App. 2d 16, Syl. ¶ 6, 894 P.2d 909, *rev. denied* 257 Kan. 1092 (1995).

The Court of Appeals in *Crooks*, 12 Kan. App. 2d 62, granted the medical malpractice defendant summary judgment because the alcoholic patient, who allegedly sustained brain damage from negligently prescribed Valium, failed to present expert causation evidence. The common knowledge exception was found not applicable because the patient's preexisting condition of phlebitis could have contributed to the alleged damage. Hare's conditions existing before Dr. Wendler's treatment were many and may have caused his alleged damages.

Hare produced only Dr. Logan's deposition testimony. Even after Dr. Wendler and TKI filed motions for summary judgment, nothing more from Dr. Logan was filed. Hare did not seek the benefit of K.S.A. 60-256(f). His only response was the May 7, 1996, letter of counsel and Hare's affidavit, neither qualifying as expert opinion evidence.

Hare's preexisting conditions complicate the question of whether his later hospitalizations for mental problems were attributable to Dr. Wendler's alleged sexual misconduct in 1991. Despite the obvious impropriety of Dr. Wendler's alleged sexual misconduct and breach of the standard of care, the causation issue is too complex to fit within the common knowledge exception and is beyond the capability of a lay person to decide.

Pending Discovery

We now consider the remaining secondary issue. Hare points out that at the time the summary judgment motions were granted, pretrial discovery had not been completed. Hare's motion to compel discovery against TKI was pending.

TKI contends that none of the remaining discovery sought by Hare would affect his ability to present expert evidence on causation. Also, Dr. Logan's ability to offer opinions on causation was strictly within Hare's control. We agree.

Hare's fundamental problem is his lack of expert medical causation evidence. Even assuming TKI produced documents showing complaints against Dr. Wendler before Hare's second hospitalization at TKI, such discovery would not cure Hare's failure to obtain any expert opinion on causation. The discovery Hare sought to compel against TKI came late in the game. The district court correctly concluded that this discovery was irrelevant to the problem of Hare's lack of expert evidence on causation and the question of whether the common knowledge exception should apply.

Affirmed.

LOCKETT and DAVIS, JJ., not participating.

GARY W. RULON, J., and RICHARD W. WAHL, Senior Judge, assigned.