(995 P.2d 381)
No. 79,395

CAPRICE D. SCHMIDT, Individually, and as Special Administrator of the Estate of CLAUDE SCHMIDT, Deceased, *Appellant,* v. JACK R. SHEARER, C.R.N.A.; DAVID A. BRIAN; WESTERN PLAINS REGIONAL MEDICAL CENTER; and ST. FRANCIS REGIONAL MEDICAL CENTER, *Appellees.*

Opinion filed December 30, 1999.

*Randall E. Fisher*, of Law Offices of Randall E. Fisher, of Wichita, and *Arden J. Bradshaw*, of Bradshaw, Johnson & Hund, of Wichita, for appellant.

*Don D. Gribble, II*, and *Donald N. Peterson, II*, of Kahrs, Nelson, Fanning, Hite & Kellogg, L.L.P., of Wichita, for appellee St. Francis Regional Medical Center.

*William R. Smith*, of Law Office of Wm. R. Smith, of Wichita, for appellee David A. Brian, M.D.

Before BRAZIL, C.J., GERNON and GREEN, JJ.

GERNON, J.: Caprice Schmidt, individually and as special administrator of the Claude J. Schmidt estate, (Schmidt) appeals the verdict finding David A. Brian, M.D., 1% at fault for her husband's death. Schmidt also appeals the dismissal of St. Francis Regional Medical Center (St. Francis) from the case upon summary judgment motion.

Claude Schmidt began having severe nose bleeds. He was treated by Dr. Brian, a licensed specialist of otorhinolaryngology (ear, nose, and throat). Non-surgical procedures did not help, and Schmidt submitted to surgery. The anesthesia was administered by a certified registered nurse anesthetist, Jack Shearer.

Soon after surgery, Claude bit down on the tube supplying oxygen to his lungs. Since his nose was blocked from the surgery, his only air passage was through this tube. Shearer removed the tube from Claude's throat and then attempted, unsuccessfully, to ventilate him, using a bag and a mask. After several attempts to ventilate Claude, Shearer called Dr. Brian back into the operating room. Dr. Brian returned immediately and performed a tracheostomy.

Claude never regained consciousness and was transferred from Dodge City to St. Francis Medical Center in Wichita. Claude was eventually placed on a sleep apnea monitor. Claude later quit breathing, and the hospital staff attempted to resuscitate him until ordered not to by his wife. Claude died.

Schmidt filed a lawsuit in Sedgwick County against Dr. Brian, Shearer, Humana Hospital in Dodge City, and St. Francis, alleging medical malpractice and wrongful death. St. Francis was granted summary judgment on Schmidt's claims and on its counterclaim for medical costs. Thereafter, the remaining defendants sought a transfer to Ford County, and the Sedgwick court granted their motion.

The Ford County court found Shearer to be negligent per se. Near the trial date, Schmidt settled with Shearer and Humana Hospital.

Schmidt proceeded to trial against Dr. Brian. A jury found Dr. Brian to be 1% at fault and Shearer to be 99% at fault. The jury awarded $445,000 in damages. Schmidt appeals.

## Summary Judgment to St. Francis

Schmidt claims the trial court improperly granted summary judgment in favor of St. Francis.

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of the plaintiff's case.' " *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 622, 971 P.2d 1169 (1999) (quoting *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131, 955 P.2d 1189 [1998]).

This court will review a trial court's summary judgment decision de novo. See *Hare v. Wendler*, 263 Kan. 434, 439, 949 P.2d 1141 (1997).

Schmidt asserts a medical malpractice claim against St. Francis, which requires the same elements of proof as any negligence action. See 263 Kan. at 440. To establish a claim of negligence, a plaintiff must prove the existence of a duty, breach of that duty, injury, and a causal connection between the duty breached and the injury suffered. *Hesler*, 266 Kan. at 623. Generally, expert testimony is required in medical malpractice cases to establish the accepted standard of care and to prove causation. *Hare*, 263 Kan. at 440.

Schmidt claims that the apnea monitor was not functioning properly or the volume on its alarm had been turned too low to alert hospital employees. In granting St. Francis' motion for summary judgment, the trial court ruled that there was no evidence to support Schmidt's claim and that she had failed to establish specific facts to show that St. Francis' response time was inappropriate. This is a negative finding. The court pointed to Schmidt's deposition testimony in which she stated that for all she knew, she and/or the staff at St. Francis Regional Medical Center were alerted immediately after her husband quit breathing.

In her deposition, Schmidt admitted that she was light sleeper and was constantly aware of anything going on in her husband's room. Schmidt also admitted that the apnea monitor had awakened her and that hospital staff responded immediately when she called for help. Finally, Schmidt admitted that she was only speculating as to whether the volume on the apnea monitor had been turned down and whether that had made any difference at all in delaying resuscitation efforts.

Beyond her mere speculation, Schmidt failed to offer any evidence that the monitor had been turned down. Furthermore, her testimony contradicts her claim that the volume had been turned down because she acknowledged that the monitor woke her up and alerted her to Claude's condition. Without evidence to establish that the alarm had sounded for an extended period before waking her, Schmidt has failed to establish the element of causation.

Schmidt argues that Claude's gray color proves that the alarm had been sounding for a period of time. Schmidt, however, failed to offer any expert evidence establishing the causation between lack of oxygen and turning gray. Expert testimony is required to establish this causal link, and the common knowledge exception does not apply. See *Hare*, 263 Kan. at 440.

Because St. Francis established that Schmidt had no evidence necessary to support the essential element of causation, we conclude that the trial court properly granted its motion for summary judgment. See *Hesler*, 266 Kan. at 622.

## Transfer To Ford County

After the Sedgwick County District Court granted St. Francis summary judgment on Schmidt's claims and St. Francis' counterclaims, the remaining defendants moved for a change of venue to Ford County. The allowance or refusal of a motion for change of venue rests within the sound discretion of the trial court. *Cessna Aircraft Co. v. Metropolitan Topeka Airport Authority*, 23 Kan. App. 2d 1038, 1056, 940 P.2d 84, *rev. denied* 262 Kan. 959 (1997).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, or when no reasonable person would adopt the view taken by the trial court. *Hawkinson v. Bennett*, 265 Kan. 564, 591, 962 P.2d 445 (1998).

The trial court based its decision to change venue on K.S.A. 60-608, which provides in pertinent part:

"If, before trial of an action on the merits is commenced, a party with reference to whom venue was determined ceases to be a party and venue would no longer be proper as to the remaining parties, on the application of any remaining party promptly made, the cause *shall* be transferred to a county of proper venue. If there is more than one such county, the transfer shall be to a county selected by the plaintiff." (Emphasis added.)

The court determined that St. Francis was no longer a party to the action and that K.S.A. 60-603 and K.S.A. 60-604 did not properly establish venue in Sedgwick County for the remaining defendants. The court also found that Schmidt's "wrongful death cause of action arose in the county where the alleged negligent acts of the remaining defendants occurred, Ford County, Kansas."

Schmidt asserts four arguments to support her claim that the Sedgwick County court improperly granted the defendants' motions. First, Schmidt argues that the defendants failed in meeting their burden to establish a factual basis for the venue change. Second, K.S.A. 60-608 does not apply because St. Francis continued to be a party to the lawsuit. Third, Schmidt argues that venue was proper in Sedgwick County because Claude's death occurred there. Fourth, Schmidt argues that the other defendants were transacting business in Sedgwick County.

Schmidt correctly cites *Lambertz v. Abilene Flour Mills Company, Inc.*, 209 Kan. 93, 97, 495 P.2d 914 (1972), for the proposition that the party seeking the change of venue bears the burden of establishing a basis for the transfer. Her argument that the defendants failed to establish the proper factual basis, however, overlooks the evidence before the court.

The primary fact necessary for the application of K.S.A. 60-608 is the summary judgment decision in favor of St. Francis. The defendants' motions properly noted this fact for the court. In addition, the defendants' motions included facts establishing the county where the alleged negligent acts occurred, thus providing a factual basis for determining venue based on where the cause of action arose.

Next, Schmidt asserts that St. Francis continued to be a party to the action. K.S.A. 60-608 requires that there be a substantial claim against a party in order for venue to be dependent on that party. The determination of whether a substantial claim exists against a defendant is within the discretion of the trial judge. *Fredricks v. Foltz*, 221 Kan. 28, 33, 557 P.2d 1252 (1976). The *Fredricks* court upheld a trial court's ruling that a summary judgment decision in favor of a defendant eliminated any substantial claims against that defendant. 221 Kan. at 33.

Schmidt argues that K.S.A. 60-611 does not require a party to have a significant role before being considered a party under the venue statute. This argument overlooks the express language of K.S.A. 60-608, which serves as the basis for the trial court's decision and requires a substantial claim against the party. The trial court here did not transfer the case based on K.S.A. 60-611.

Schmidt argues that St. Francis continues to have a substantial claim because the court granted it a lien against any settlement or judgment that might result from the case. St. Francis, however, had no further involvement aside from waiting for a final decision and establishing a claim against any award Schmidt received. If reasonable persons could differ as to the propriety of the trial court's action, then it cannot be said that the trial court abused its discretion. *State v. Stallings*, 262 Kan. 721, 726, 942 P.2d 11 (1997).

Next, Schmidt argues that venue was proper in Sedgwick County because it was the place where Claude died. She supports this argument with case law that establishes *when* a wrongful death action may be brought. This case law, however, does not establish *where* a wrongful death action may be brought and, thus, is not controlling authority for this question. The question of where a wrongful death action arises, under the unique facts presented here, is an issue of first impression in Kansas.

K.S.A. 60-1901 *et seq.* authorize a cause of action for wrongful death. These statutes do not include a specific rule for determining venue. As a result, the general venue statutes control. See K.S.A. 60-603; K.S.A. 60-604.

K.S.A. 60-603 establishes the general rule for determining venue in suits against Kansas residents and states:

"An action against a resident of this state, other than an action for which venue is otherwise specifically prescribed by law may be brought in the county,

(1) in which the defendant resides, or

(2) in which the plaintiff resides if the defendant is served therein, or

(3) in which the cause of action arose, or

(4) in which the defendant has a place of business or of employment if said defendant is served therein, or

(5) in which the estate of a deceased person is being probated if such deceased person was jointly liable with the defendant and a demand to enforce such liability has been duly exhibited in the probate proceedings, or

(6) in which there is located tangible personal property which is the subject of an action for the possession thereof if immediate possession is sought in accordance with K.S.A. 60-1005 at the time of the filing of the action."

Likewise, K.S.A. 60-604 establishes the general rule for determining venue in suits against corporations qualified to do business in Kansas, and states:

"An action against a domestic corporation, or against a foreign corporation which is qualified to do business in this state, other than an action for which venue is otherwise specifically prescribed by law, may be brought in the county in which:
(1) Its registered office is located;
(2) the cause of action arose;
(3) the defendant is transacting business at the time of the filing of the petition;
(4) there is located tangible personal property which is the subject of an action for the possession thereof if immediate possession is sought in accordance with K.S.A. 60-1005 and amendments thereto at the time of the filing of the action; or
(5) equipment or facilities for use in the supply of transportation services, or communication services, including, without limitation, telephonic communication services, are located, where the subject of such action relates to transportation services or communication services supplied or rendered, in whole or in part, using such equipment or facilities."

Both of these statutes permit an action to be brought in the county "in which the cause of action arose." K.S.A. 60-603(3); K.S.A. 60-604(2).

Kansas has not defined when a wrongful death cause of action arises. Some states have statutes which specify the venue in wrongful death and personal injury actions. See, *e.g.*, Ala. Code § 6-5-546 (1993) (establishing venue for a medical malpractice wrongful death in the county where the act or omission constituting the breach of the standard of care actually occurred, but if more than one county is applicable, the proper venue is the residence of the decedent at the time of the act or omission); Ark. Code Ann. § 16-60-112(a) (1987) (establishing venue in the county where the accident that caused death occurred); Cal. Civ Pro. Code § 395(a) (West 1999) (establishing venue in the county where the injury causing death occurred).

Other states apply venue statutes similar to Kansas' general statute which establish venue in the county where the cause of action "arises," "occurs," or "accrues." See Annot. 58 A.L.R.5th 535, 599.

These states are divided into three categories based upon whether they use the county where the death occurred, the county where the injury occurred, or both the county where the death occurred and the county where the injury occurred. 58 A.L.R.5th 535, 599-607.

The first category of states looks to the county where death occurred. These states focus on the fact that wrongful death actions do not arise until there has been a death. *Department of Transportation v. Evans*, 269 Ga. 400, 499 S.E.2d 321 (1998) (affirming the appellate court decision in *Evans v. Dept. of Transp.*, 226 Ga. App. 74, 75, 485 S.E.2d 243 [1997]); *Wentz v. Montana Power Co.*, 280 Mont. 14, 19, 928 P.2d 237 (1996); *Gabriel v. School Dist. #4, Libby*, 264 Mont. 177, 180, 870 P.2d 1351 (1994); *Engel v. Gosper*, 71 N.J. Super. 573, 579, 177 A.2d 595 (1962). See *McDaniel v. Reed*, 613 So. 2d 758, 760 (La. App. 1993); but *cf. Keele v. Knecht*, 621 So. 2d 106 (La. App. 1993) (holding that venue was improper in the county of death because no other event occurred there).

A second category of states looks to the county where the injurious acts causing death occurred. The basis for this determination is varied. Some of these states focus on the cause of action which underlies the wrongful death action. These states point to the decedent's right to bring suit had he or she survived. *A-1 Truck Service, Inc. v. Kivenas*, 371 So. 2d 495, 496 (Fla. Dist. App. 1979); *Gaboury v. Flagler Hospital, Inc.*, 316 So. 2d 642, 644 (Fla. Dist. App. 1975); *Anthony v. Forgrave*, 126 Mich. App. 489, 493, 337 N.W.2d 546 (1983) (a concurring opinion concluded that either the county of the injury causing death or the county of the death fell within the venue statute). Other states focus on the tortious nature of a wrongful death claim and look for causation rather than the resulting death. *Cottengim's Adm'r v. Adams' Adm'x*, 255 S.W.2d 637, 638-39 (Ky. App. 1953)(holding that applying different venue rules would "bring about an anomalous situation and fix the venue of an action where only personal injury resulted from another's negligence different from the venue of one where death resulted therefrom, although both arose from the same facts"); *Green v. North Arundel Hospital*, 126 Md. App. 394, 408, 730 A.2d

221 (1999); *Huhn v. DMI, Inc.*, 215 Mich. App. 17, 19, 544 N.W.2d 719 (1996); *Dzur v. Gaertner*, 657 S.W.2d 35, 36 (Mo. App. 1983).

A third group of states authorize venue in either the county where the injury causing death occurred or in the county of death. *Bradbury v. St. Mary's Hospital*, 273 Ill. App. 3d 555, 652 N.E.2d 1228, (1995); *McMillan v. Puckett*, 678 So. 2d 652 (Miss. 1996). These states focus on the language in the venue statute. In *Bradbury*, the statute established venue in " 'the county in which the transaction or some part thereof occurred out of which the cause of action arose.' " 273 Ill. App. 3d at 557 (quoting Ill. Comp. Stat. ch. 5/2-101 [1992]). In *McMillan*, the statute established venue " 'in the county where the cause of action may occur or accrue.' " 678 So. 2d at 654 (quoting Miss. Code Ann. § 11-11-3 [1972]). The *McMillan* court held that "occur" and "accrue" were not synonymous and that the disjunctive connector "or" allowed venue in either the county of death or the county of injury. 678 So. 2d at 656. Both *Bradbury* and *McMillan* noted that a cause of action is not complete until injury occurs, and, in a wrongful death action, it cannot accrue until a death occurs. *Bradbury*, 273 Ill. App. 3d at 558; *McMillan*, 678 So. 2d at 654.

To determine which venue option applies, this court must interpret K.S.A. 60-603(3) and K.S.A. 60-604(2), which establish venue in the county where the cause of action arose. In construing statutes, the legislature is presumed to have consciously chosen the words used with an understanding of their ordinary and common meanings. *International Ass'n of Firefighters v. City of Kansas City*, 264 Kan. 17, 31, 954 P.2d 1079 (1998). "Arose" is defined as originating from a specified source. Webster's Third New International Dictionary 117. This language implies causation rather than the resulting injury. Focusing on causation leads to the conclusion that the proper venue for a wrongful death action is the county where the injury causing death occurred. In this case, that would be Ford County.

We conclude, under the facts of this case, that either the place of the injury causing death or the place of the death are appropriate for determining venue. We conclude that the trial courts are in the best position to conclude where a suit of this nature should be

tried. We believe an abuse of discretion standard applies and find no such abuse here. We find that the language contained in K.S.A. 60-609(a) provides a sufficient statutory basis and language for the trial courts.

Finally, Schmidt argues that venue was proper in Sedgwick County because the defendants were transacting business there at the time of the petition. Schmidt fails to cite to any location in the record where she alleges that any defendant besides St. Francis was transacting business in Sedgwick County. She implies that her petition alleged that the defendants were transacting business in Sedgwick County. This implication misstates the allegations contained in the petition. The only defendant Schmidt alleged to have been transacting business in Sedgwick County is St. Francis. The party who asserts that the trial court abused its discretion bears the burden of showing such an abuse of discretion. *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992). Schmidt has failed to meet her burden in demonstrating that any other defendant was transacting business in Sedgwick County.

Although the trial court relied on K.S.A. 60-608, the action could have been transferred to Ford County pursuant to K.S.A. 60-609, which allows the trial court to change venue upon the motion of a party "after due consideration of the right of the plaintiff to choose the place of the action and a finding that a transfer will serve the convenience of the parties and witnesses and the interests of justice."

All of the remaining defendants and many of the witnesses were in Ford County or Gray County, which lies directly west of Ford County and is where the plaintiff and the decedent resided. For this reason, Ford County provided a more convenient location to try the case for the parties and the witnesses.

In addition to being a more convenient venue, Ford County, in our view, better served the interests of justice. All of the remaining defendants practiced or operated in Ford County.

Based on K.S.A. 60-609, the trial court could have transferred the case to Ford County. A trial court's reason for its decision is immaterial if the ruling is correct for any reason. *KPERS v. Reimer*

*& Koger Assocs., Inc.*, 262 Kan. 110, 118, 936 P.2d 714 (1997).
The trial court did not err in transferring the case to Ford County.

## Admission Of Schmidt's Settlement

Schmidt claims the trial court improperly admitted evidence of her settlement with Shearer and Humana Hospital.

Schmidt phrases her argument as the improper admission of evidence. The essence of her argument, however, is that defense counsel's use of the evidence constituted misconduct that warrants reversal. Schmidt points to two comments, one made during the defendant's opening statement and the other made during his closing argument, in which Dr. Brian's counsel referred to the settlement with Shearer and stated that Schmidt wanted to increase her recovery.

Remarks and misconduct of counsel constitute reversible error when the parties have not had a fair trial because of them. *Smith v. Blakely, Administrator*, 213 Kan. 91, 96, 515 P.2d 1062 (1973). A fair trial requires "an adequate hearing before an impartial tribunal based on legally admissible evidence relevant to the issues involved, free from bias or prejudice." 213 Kan. at 96.

On appeal, this court must determine whether the trial court abused its discretion by examining the alleged prejudicial material and determining whether it was so inherently prejudicial that a fair trial could not have resulted. 213 Kan. at 94.

Reversible error will not be considered based on the trial counsel's misconduct unless there was an objection made before the trial court. An exception to this rule applies if the trial counsel's conduct permeated the entire proceeding and was part of the trial strategy. 213 Kan. at 95-96.

Schmidt failed to object to any of the allegedly improper remarks made by Dr. Brian's counsel. The record also fails to establish that the allegedly improper conduct by Dr. Brian's counsel permeated the proceedings.

Schmidt has failed to demonstrate that she received an unfair trial. To demonstrate unfairness, Schmidt must prove that she did not have an adequate hearing before an impartial tribunal or that the court permitted illegal, biased, or prejudicial evidence. See 213

Kan. at 96. During her cross-examination of Shearer, Schmidt herself elicited testimony regarding the settlement. She also failed to object when Dr. Brian's counsel cross-examined her regarding the settlement with Shearer. Schmidt cannot now argue that the trial court failed to act impartially relating to evidence of the settlement because she did not raise any objections before it. Likewise, Schmidt cannot assert that evidence of the settlement was not legally admissible or subject to bias or prejudice because she brought it in on cross-examination.

## Motion For Summary Judgment Against Dr. Brian

Schmidt next argues that Dr. Brian should have been found negligent per se in accordance with her motion for summary judgment. Since the jury determined that Dr. Brian was negligent, this issue is moot. A finding of negligence per se would have no effect upon the controversy. Schmidt cannot increase the damage award against Dr. Brian merely because he was negligent per se.

This court does not decide moot questions or render advisory opinions. *Shanks v. Nelson*, 258 Kan. 688, 692, 907 P.2d 882 (1995). Therefore, this issue is not properly before the court.

## Comparative Fault

The trial court allowed Dr. Brian to compare the fault of Shearer.

Schmidt asserts two arguments to demonstrate that the trial court abused its discretion in allowing Dr. Brian to amend the pretrial order to claim comparative fault as a defense. First, Schmidt argues that Dr. Brian failed to raise the claim prior to the day before trial even though he knew of the possibility of settlement with the other defendants. Schmidt claims that she was prejudiced by Dr. Brian's late assertion of the defense. Second, Schmidt argues that Dr. Brian did not provide expert witnesses to establish Shearer's negligence.

Allowing an amendment to the pretrial order is within the sound discretion of the trial court. This court will not overturn the trial court's decision unless it can be shown that the trial court abused its discretion. Judicial discretion is abused when no reasonable per-

son would take the view adopted by the trial court. *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 141-42, 815 P.2d 72 (1991).

Schmidt's first argument is without merit. Dr. Brian raised the defense of comparative fault in his answer to her petition. Schmidt's assertion that Dr. Brian's pretrial questionnaire did not claim any fault against the other defendants cannot be verified because Dr. Brian's pretrial questionnaire is not in the record.

Regardless of whether Dr. Brian claimed comparative fault in his pretrial questionnaire, the trial court did not abuse its discretion in allowing Dr. Brian to assert the defense of comparative fault. Because Dr. Brian raised the defense in his initial pleading, Schmidt cannot claim that she was surprised. Although Dr. Brian admits that he did not actively pursue a claim of fault against Shearer until Schmidt removed her claims against the other parties, the trial court's offer of a continuance would have eliminated any potential prejudice to Schmidt.

Schmidt's second argument also fails to establish that the trial court abused its discretion. She claims that Dr. Brian did not have any expert witnesses to establish Shearer's negligence. Because Dr. Brian's pretrial questionnaire is not in the record on appeal, this claim cannot be verified. An appellant bears the burden to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. *McCubbin v. Walker*, 256 Kan. 276, 295, 886 P.2d 790 (1994). Assertions in an appellate brief are not sufficient to satisfy the inadequacies of the record on appeal. *Smith v. Printup*, 254 Kan. 315, 353, 866 P.2d 985 (1993).

At trial, the court instructed the jury to consider all of the evidence produced by the plaintiff and defendant in determining whether the parties had met their burdens of proof. Thus, the jury was not limited to witnesses called by Dr. Brian to determine whether Shearer was comparatively negligent.

Dr. Brian elicited testimony under cross-examination providing evidence that Shearer had been negligent. Dr. Kerth testified that he faulted Shearer for not calling Dr. Brian back to the operating room sooner and for failing to place bite blocks in Claude's mouth

to prevent him from biting down on his airway. Dr. Bassell also found Shearer to be negligent for extubating Claude at an inappropriate time, for failing to paralyze Claude after he bit on the airway, for failing to use a bite block, and for failing to call Dr. Brian back to the operating room sooner. In addition, Shearer testified that management of the patient's airway was his duty as the anesthetist and that the response to Claude's biting on the airway was based on his clinical decisions.

Schmidt relies on *Brown*, 249 Kan. 124, for the proposition that this court should deny the addition of defenses on the eve of trial. In *Brown*, the trial court denied the defendant's request to claim additional defenses on the afternoon before trial. The Kansas Supreme Court noted that the defendant could have raised the new defenses prior to the day before trial and found no abuse of discretion in the trial court's decision. 249 Kan. at 143. The trial court's decision in *Brown*, however, can be distinguished from the trial court's decision in this case.

In *Brown*, the defenses the defendant attempted to raise had not been at issue in the case prior to the eve of trial. In this case, the defenses raised by Dr. Brian had been asserted as early as his responsive pleading. In addition, Schmidt had raised the issue prior to the time Dr. Brian asserted it, so it was not a new issue to the case.

Schmidt's reliance on *Brown* also overlooks the appellate standard of review that was applied. The *Brown* court reviewed the trial court's decision for an abuse of discretion. The same standard of review applies in this case. Schmidt has failed to demonstrate that the trial court abused its discretion by permitting Dr. Brian to claim comparative fault against Shearer.

### Jury's Verdict

Where the alleged passion or prejudice of the jury is not shown by definite proof, but depends on the size of the verdict for support, the award will be upheld unless it shocks the conscience of the court. There is no simple, symmetrical pattern or design for determining whether a verdict is sufficient or insufficient. Each case must stand on its own facts. *Martin v. Board of Johnson*

*County Comm'rs*, 18 Kan. App. 2d 149, 162-63, 848 P.2d 1000 (1993).

The jury awarded a total of $445,000 in damages. Although Schmidt sought damages of nearly $3.8 million, she cites no evidence in the record to indicate that the jury disregarded the evidence presented. The appellate court does not reweigh the evidence or pass on the credibility of the witnesses. *State v. Myatt*, 237 Kan. 17, 29-30, 697 P.2d 836 (1985). The jury's award is supported by the record.

In *Smith v. Newell*, 210 Kan. 114, 116, 499 P.2d 1112 (1972), the Kansas Supreme Court upheld a damage award that the plaintiff considered inadequate. The plaintiff had been injured in an automobile accident. She incurred medical expenses of $10,300 and lost $10,000 in wages. Although the evidence indicated that the plaintiff suffered a great deal of pain, the jury awarded $22,750 in damages. The court focused on the use of juries to determine damages and noted that there was no uniformity in the decisions regarding when damages are excessive or inadequate. 210 Kan. 117-18.

In *Newell*, the economic damages were for past losses and were not based on speculation of future losses. Schmidt's alleged economic damages, on the other hand, are subject to speculation. For example, Schmidt's calculations fail to consider the use of farm capital which survived Claude and remained available for her to use for income production. Schmidt's damages also fail to consider a shortened life expectancy for Claude based on his medical history prior to his problems with nose bleeds.

Considering the precedent of *Newell* and the evidence in the record, the damages awarded in this case are not shocking to the conscience, even though reasonable minds could disagree on the appropriate amount of damages to award.

Affirmed as to all issues raised on appeal.