**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LEONARD TSOSIE, Representative
of the Estate of Nettie Ann Tsosie;
LEONARD TSOSIE; ALBERTA
CAPITAN; LARRY TSOSIE; JIMMY
TSOSIE; and THOMAS TSOSIE,

        Plaintiffs – Appellants,

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee.

No. 04-2342

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-02-1411 MCA/RHS)**

---

Henry S. Howe, Henry S. Howe, P.C., Gallup, New Mexico for the Plaintiffs –
Appellants.

Jan Elizabeth Mitchell, Assistant U.S. Attorney (David C. Iglesias, United States
Attorney with her on the brief), Albuquerque, New Mexico for the Defendant –
Appellee.

---

Before **LUCERO**, **McKAY**, and **McCONNELL**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Nettie Ann Tsosie, an enrolled member of the Navajo Nation, died after an emergency room physician at a hospital operated by the Indian Health Service ("IHS") failed to diagnose that she was suffering from hantavirus. Her husband, Leonard Tsosie, acting both in his personal capacity and as representative of the estate, along with Nettie Tsosie's children, filed suit against the United States under the Federal Tort Claims Act ("FTCA"). They claimed that the treating physician was an "employee of the United States" under the FTCA who negligently failed to diagnose the decedent's condition. The district court dismissed the suit, finding that the treating physician was an independent contractor, not a federal employee, and thus the United States did not waive sovereign immunity under the FTCA. In its dismissal, the district court also rejected the argument that the United States was equitably estopped from asserting the independent contractor defense. Plaintiffs appealed. Because we conclude that the treating physician was an independent contractor at the time of service, and that there is no basis to estop the United States from asserting that defense, we exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **AFFIRM**.

**I**

Late in the evening of June 4, 2002, Nettie Tsosie sought emergency medical care from the Gallup Indian Medical Center ("GIMC"), a facility operated by the Indian Health Service. She complained of diarrhea, vomiting, and malaise. The sole physician on-duty in the emergency room, Dr. Obafemi

Opesanmi, performed a physical examination, and ordered blood work, x-rays, and a stool sample. Dr. Opesanmi, employed at GIMC pursuant to a non-personal services contract, diagnosed Tsosie with acute gastroenteritis, mild dehydration, and hypokalemia. After being treated, Tsosie was prescribed several medications, and was released.

Her symptoms growing only more severe, Tsosie sought emergency medical treatment from Rehoboth McKinley Christian Hospital, a private facility also located in Gallup. Rehoboth transferred Tsosie to a hospital in Albuquerque, and she there died from Hantavirus Pulmonary Syndrome ("HPS").

Leonard Tsosie, Nettie's widower, also an enrolled member of the Navajo Nation, filed a negligence action against the United States as owner and operator of GIMC under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., alleging a failure to timely diagnose HPS when Nettie Tsosie sought treatment at the emergency room of GIMC. Leonard Tsosie was joined by Nettie's children and heirs, Alberta Capitan, Larry Tsosie, Jimmie Tsosie, and Thomas Tsosie.

In its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56, the United States conceded that Dr. Opesanmi's care was substandard for purposes of their motions, but argued the district court lacked jurisdiction because Dr. Opesanmi was merely an independent contractor, rather than a federal employee,

and thus was not subject to the FTCA's waiver of sovereign immunity.[1]  In response, Tsosie took the position that Dr. Opesanmi was not an independent contractor, and even if his employment were so construed, that the United States was estopped from denying that Dr. Opesanmi was an employee by virtue of the special trust relationship between the United States and Native Americans. Finally, Tsosie claimed that Congress expressed its intention that health care practitioners like Dr. Opesanmi be afforded the protection of the FTCA by passing the Indian Health Care Improvement Act ("IHCIA"), 25 U.S.C. § 1601 et seq.[2]

The district court granted the Government's motions in their entirety with respect to Dr. Opesanmi's status as an independent contractor.  After further briefing, the district court granted the Government's other motion, finding that the special trust relationship between the United States and Native Americans did

---

[1]  This exception is set forth in 28 U.S.C. § 1671 which provides in pertinent part:

> [T]he term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.

[2]  Prior to moving to dismiss, the United States filed an answer in which it asserted that Dr. Opesanmi was an independent contractor as an affirmative defense.  Even with this notice Tsosie's counsel inexplicably failed to add Dr. Opesanmi as a defendant.

not estop the Government from asserting an independent contractor defense and that 25 U.S.C. § 1680c was irrelevant to this case. Tsosie appeals from both orders.

## II

We review a district court's dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) de novo. U.S. West, Inc. v. Tristani, 182 F.3d 1202, 1206 (10th Cir. 1999). A district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is also reviewed de novo. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

### A

The FTCA provides a limited waiver of sovereign immunity, allowing the United States to be sued for damages arising from torts committed by government employees acting within the scope of their employment. Curry v. United States, 97 F.3d 412, 414 (10th Cir. 1990) (quoting 28 U.S.C. § 1346(b)). Although "employees" of the government include officers and employees of federal agencies, "independent contractors" are not "employees." Id. at 414. As such, "the FTCA does not authorize suits based on the acts of independent contractors or their employees." Id.

We have held that the "critical question" in determining whether an individual is a federal employee or an independent contractor for purposes of the FTCA is "whether the federal government has the power to control the detailed

- 5 -

physical performance of the individual." Duplan v. Harper, 188 F.3d 1195, 1200 (10th Cir. 1999). Under this "control test," we must determine whether the government supervises the individual's day-to-day operations. Id. When the individual is a physician, however, we recognize that a physician "must have discretion to care for a patient and may not surrender control over certain medical details." Lilly v. Fieldston, 876 F.2d 857, 859 (10th Cir. 1989). Within these limits, our inquiry involves consideration of a number of factors, including:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses his own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Id.

It is clear that the intent of the government and Dr. Opesanmi was to establish an independent contractor relationship. Dr. Opesanmi was working in the GIMC emergency room pursuant to a non-personal services contract between the Department of Health and Human Services–Navajo Area Indian Health Service ("NAIHS") and Medical Doctor Associates, Inc. ("MDA") for provision of emergency physician services. Under the "Indefinite Delivery Indefinite Quantity Contract," (the "Contract") MDA agreed to provide qualified physicians in their field of specialties to various NAIHS units. The Contract required MDA to provide professional medical services in both inpatient and outpatient settings,

including emergency room physicians on an "as needed" basis.  Another Contract provision required that patient care services were to be appropriate and timely in accordance with the standards of care established by recognized medical care organizations.

Section I-8(a) of the Contract sets forth MDA's obligations to provide GIMC with contract physicians.  First, it clearly provides that the professional services rendered by the contract physicians are rendered in their capacity as independent contractors:

> It is expressly agreed and understood that this is a nonpersonal services contract . . . under which the professional services rendered by the Contractor are rendered in his capacity <u>as an independent contractor</u>.

(emphasis added).  Section I-8(a) also makes clear that the second <u>Lilly</u> factor for Dr. Opesanmi being an independent contractor is met:

> The Government may evaluate the quality of professional and administrative services provided, <u>but retains no control over professional aspects of the services rendered</u>, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments.

(emphasis added).  Given that Dr. Opesanmi does not use his own tools or equipment, the third factor favors "employee" status, but unremarkably so:  When a physician shows up to work in today's world – either as an independent contractor or a full-fledged employee – he no longer is likely to carry all relevant

medical instruments in a black satchel.  Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service.

Factors four and five of Lilly are also met by the Contract.  Section I-8(a) further provides that MDA is required to provide medical malpractice coverage for all physicians working pursuant to the Contract:

> The Contractor shall maintain during the term of this contract liability insurance issued by a responsible insurance carrier . . . .

There is no dispute that MDA in fact provided such coverage, and that MDA assumed the duty of paying Social Security taxes.  Tsosie does not argue that the sixth factor is not met, i.e. that federal regulations prohibit the subcontracting of emergency medical services.  Finding none ourselves, we conclude this factor weighs in the Government's favor.  Finally, the seventh factor is met as the Contract authorizes MDA to subcontract with others.

Tsosie concedes that the Contract leaves "little doubt that the contract between the IHS and MDA was drafted to create the impression of an independent contractor rather than an employer-employee relationship."  Yet, he argues that under Bird v. United States, 949 F.2d 1079 (10th Cir. 1991), we are obliged to deem Dr. Opesanmi an "employee" of the federal government despite the contract language quoted above.

We disagree.  In Bird, we reversed a district court's dismissal of an FTCA suit against the United States for the negligence of a certified registered nurse

anesthetist concluding that the nurse was an "employee of the government" as contemplated by the FTCA's limited waiver of sovereign immunity. Id. at 1081. Delaine Bird, the decedent, had been negligently treated by the nurse at an Indian Health Service hospital in Oklahoma that covered personnel shortages by hiring employees through a temporary placement service. Id. at 1080-81. Although there was no contract between the federal government and the temporary placement service, there was a "requisition for service" indicating the duration of the anesthesia coverage sought by the hospital. Id. at 1081. The requisition for service form declared that the government would not be responsible for the negligence of the "contractor," that the "vendor" would provide his own insurance, and that all equipment would be supplied by the government.

We held these recitations insufficient to qualify the nurse as an independent contractor because state law required certified registered nurses administering anesthesia to be "under the supervision of and in the immediate presence of a physician licensed to practice medicine." Violation of this rule was punishable as a misdemeanor. Id. (quoting 59 O.S. §§ 491-492). Because state law required that the nurse be closely supervised by a licensed physician, there can be no question that the hospital staff "control[led] the detailed physical performance of the individual." Duplan, 188 F.3d at 1200. Because the physician was a federal employee and, pursuant to state law, was directly supervising the nurse's performance, the nurse was in turn a federal employee.

This case could not be more unlike <u>Bird</u>. The care at issue in this case was provided by Dr. Opesanmi, who was authorized to operate independently, and was not subject to any equivalent statutory scheme mandating that his care be supervised. Moreover, the contract under which Dr. Opesanmi performed his medical services did not contain mere form "recitations" attempting to create an independent contractor relationship, but rather was carefully drafted to ensure that all hallmarks of such a relationship were present. Given that the <u>Lilly</u> factors point in favor of independent contractor status, we conclude Dr. Opesanmi was an independent contractor.

**B**

Tsosie argues alternatively that the special trust relationship between the United States and Native Americans should estop the Government from denying liability based on Dr. Opesanmi's status as an independent contractor. No trust corpus having been identified, Tsosie argues the existence of an enforceable duty is determined by examining the language of the applicable statute or treaty, its legislative history, and the federal government's course of conduct. We are told that through passage of several statutes, Congress clearly established a fiduciary obligation to provide health care to Native Americans.[3] This fiduciary obligation,

---

[3] These statutes are: (1) the Snyder Act, 42 Stat. 208 (1921), as amended, 25 U.S.C. § 13, which authorized provision of health services to Native Americans; (2) the Johnson-O'Malley Act, 48 Stat. 596 (1934), 25 U.S.C. § 452 et seq., which directed that health services be made available to all members of

(continued...)

- 10 -

he argues, estops the federal government from denying liability for an independent contractor's negligent provision of medical services. Tsosie's argument, however, fundamentally mistakes the requirements for applying equitable estoppel against the federal government.

In Lurch v. United States, 719 F.2d 333 (10th Cir. 1983), we detailed the elements necessary to obtain equitable estoppel against the federal government:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Id. at 341. In Lurch, the plaintiff argued that the United States was estopped from invoking the FTCA's independent contractor exception because he had no notice that he had been treated by a contract doctor until after the statute of limitations had run for filing his state court action. Although in answer to a Freedom of Information Act request the government had previously admitted that the treating physician was a federal employee, we rejected that argument because there was no showing of "affirmative misconduct" on its part. Id.

---

³(...continued)
federally recognized tribes; (3) the Transfer Act, 68 Stat. 674 (1954), as amended 42 U.S.C. § 2001 et seq., which transferred to the Department of Health, Education, and Welfare responsibilities relating to the maintenance and operation of hospitals and health facilities for Native Americans; and (4) the Indian Health Care Improvement Act, 90 Stat. 1400 (1976), as amended, 25 U.S.C. § 1601 et seq., which established programs to improve the scope and quality of federal health services to Native Americans.

Tsosie simply does not argue that the Government engaged in "affirmative misconduct." Rather, he urges that we follow two district court cases from outside this circuit – Utterback v. United States, 688 F. Supp. 602 (W.D.Ky. 1987) and Gamble v. United States, 648 F. Supp. 438 (N.D. Ohio 1986) – in which the government was equitably estopped in the absence of a showing of affirmative misconduct. These cases, however, conflict with the clear law of this circuit, and we will not follow them here. We conclude the district court properly determined that the conditions for equitable estoppel were not met in this case.[4]

**C**

Finally, Tsosie argues that Congress has specifically declared its intention that health care practitioners like Dr. Opesanmi be "afforded the protection of the FTCA" in a provision of the IHCIA. This provision, 25 U.S.C. § 1680c, captioned "Health Services for Ineligible Persons," states:

> (d) Extension of hospital privileges to non-Service health care practitioners
>
> Hospital privileges in health facilities operated and maintained by the Service or operated under a contract entered into under the Indian Self-Determination Act [25 U.S.C.A. § 450f et seq.] may be extended to non-Service health care practitioners who provide services to persons described in subsection (a) or (b) of this section. Such non-Service health care practitioners may be regarded as employees

_____

[4] Tsosie argued below that the special trust relationship between the United States and Native Americans gave rise to a fiduciary duty on the part of the government to provide medical care to Native Americans. Breach of this duty, he argued, gave rise to a cause of action in its own right sufficient to overcome sovereign immunity. Tsosie has abandoned this argument on appeal.

- 12 -

> of the Federal Government for purposes of section 1346(b) and chapter 171 of Title 28 (relating to Federal tort claims) only with respect to acts or omissions which occur in the course of providing services to eligible persons as a part of the conditions under which such hospital privileges are extended.

(emphasis added). Because Dr. Opesanmi was granted the same privileges as full-time staff physicians at GIMC, Tsosie argues, GIMC extended to him "hospital privileges" as that term is used in § 1680c(d). Moreover, Tsosie observes that Dr. Opesanmi was obligated to treat eligible individuals as well as persons "not otherwise eligible for the health services provided by the [Indian Health] Service." 25 U.S.C. § 1680c(a)(1)(C). For these reasons, Tsosie urges that we regard Dr. Opesanmi as an "employee of the United States" for purposes of FTCA coverage.

This argument presents a topsy-turvy reading of the statute. Title 25 U.S.C. § 1680c specifically pertains to health services provided to ineligible persons at Indian Health Service facilities. Section 1680c(d) simply excludes from FTCA protection non-Service health care providers who commit a tort during the treatment of ineligible persons. Contrary to Tsosie's interpretation, the statute does not establish the converse: that non-Service health care providers treating eligible patients are automatically covered by the FTCA. Under § 1680c(d), if a non-Service health care practitioner is granted hospital privileges to provide services to ineligible persons for one of the enumerated reasons in the statute, that non-Service health care practitioner <u>may</u> be covered by the FTCA for

- 13 -

purposes of the care that he might give to an eligible person.  By stating that non-Service health care practitioners may be covered by the FTCA, the statute clearly recognizes that there will be instances where the non-Service health care practitioners will not be covered by the FTCA, e.g., an independent contractor (non-personal services contract) which specifically requires that the contractor maintain its own liability insurance.  In contrast, a non-Service health care practitioner providing services in facilities owned, operated or constructed under the jurisdiction of the IHS pursuant to a personal services contract would be covered by the FTCA.  25 U.S.C. § 1638c(d).  We decline Tsosie's counsel's bid that we invert § 1680c.

## III

Because Dr. Opesanmi was an independent contractor at the time of service to Nettie Tsosie, and because there is no reason to estop the United States from asserting Dr. Opesanmi's employee status as a defense, the judgment of the district court is **AFFIRMED**.