**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 25, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

COREY D. JONES,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

No. 09-3084
(D.C. No. 5:07-CV-03223-JTM-DWB)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **ANDERSON**, and **EBEL**, Circuit Judges.

Plaintiff-Appellant Corey D. Jones appeals from district court orders that

denied his motions for appointment of counsel, dismissed his Federal Tort Claims

Act (FTCA) lawsuit, and denied reconsideration of the dismissal. We have

jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Jones was an inmate at the United States Penitentiary (USP) in Leavenworth, Kansas. On May 25, 2005, he reported to the prison's medical staff that he had injured his right ankle the previous day while playing basketball. The staff member on duty diagnosed the injury as an ankle sprain, gave Mr. Jones a cane and pain medication, and ordered x-rays. On May 28, Mr. Jones was placed in a leg cast after x-rays revealed a fracture.

On June 1, a medical doctor took new x-rays and concluded that Mr. Jones "had a closed fracture/dislocation of his right ankle and possible related injury of [his] right knee." ROA, Vol. 1, Part 2, Doc. 28-6 at 4. On June 7, an orthopedic surgeon performed an "open reduction internal fixation" procedure. *Id.* Mr. Jones was released from the hospital and returned to Leavenworth on June 9. There, he submitted a prison grievance regarding his medical care, and stated that his injury occurred when he "went up for a rebound [and] . . . came down on another guys [sic] foot," causing his foot to "turn all the way around back-wards [sic]." *Id.*, Doc. 28-2 at 23.

Over the following eight weeks, on at least three occasions, Mr. Jones's ankle was examined and x-rayed by prison medical staff and found to be healing properly. Further, the surgeon conducted follow-up examinations in mid-June and late-August, and noted that Mr. Jones's fracture was healing well.

On September 2, 2005, Mr. Jones was transferred to another federal prison. There, a medical doctor examined Mr. Jones's ankle and, despite some painful swelling, found the ankle "solid." *Id.*, Doc. 28-6 at 23. Mr. Jones resumed playing basketball.

In September 2006, Mr. Jones filed an administrative tort claim that "related to a slip and fall in an outdoor basketball court area and subsequent medical malpractice." *Id.*, Doc. 28-2 at 3.[1] After his administrative claim was denied, Mr. Jones filed this suit, alleging that USP Leavenworth failed to maintain the basketball court in a safe condition and that it provided inadequate medical care. He claimed that his injury occurred "when he stepped into a fissure in the concrete on the basketball court," that his medical treatment was delayed, and that "[t]he metallic sideplate and screw apparatus" used to repair his ankle were loose. *Id.*, Part 1, Doc. 1 at 7, 10-11. The district court screened the suit as proceeding under the FTCA, which Mr. Jones expressly agreed with.

Throughout the course of the litigation, Mr. Jones filed multiple motions for appointment of counsel. The district court denied those motions, finding that Mr. Jones was capable of advancing his claims without an attorney's assistance. Ultimately, the district court dismissed the suit on the government's motion to dismiss or for summary judgment, ruling that (1) there was no evidence that USP

---

[1]     The FTCA's claims procedure is separate from the Bureau of Prison's administrative remedies procedure. *Compare* 28 C.F.R. § 542.10 (prison's administrative remedies program), *with id.* § 543.30 (FTCA's claims procedure).

Leavenworth maintained the basketball court in an unsafe condition or that it did so willfully or maliciously, as required by the Kansas Recreational Use Statute, and (2) Mr. Jones's medical claims targeted independent contractors, who are not liable under the FTCA. The district court also denied Mr. Jones's competing motion for summary judgment.

Twenty days later, Mr. Jones simultaneously filed a notice of appeal and motions for appointment of counsel, for reconsideration, and for filing the motion for reconsideration nunc pro tunc so that it was timely. The district court concluded that it lacked jurisdiction over the motion to reconsider and that the other post-judgment motions were moot.[2]

## DISCUSSION

### I. APPOINTMENT OF COUNSEL

We review a district court's refusal to appoint counsel for an indigent inmate in a civil case for abuse of discretion. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004). Relevant considerations include the merits of the litigant's claims, the nature and complexity of the factual and legal issues,

---

[2]     Although Mr. Jones failed to file an amended notice of appeal after the district court denied his motion to reconsider, his opening brief, filed twenty-eight days after the district court's order denying reconsideration, contains the information required by Fed. R. App. P. 3, and is therefore the functional equivalent of a timely notice of appeal from that post-judgment order. We, therefore, have appellate jurisdiction to review the order. *See Smith v. Barry*, 502 U.S. 244, 248-49 (1992).

and the litigant's ability to investigate the facts and to present his claims. *Id.*
"Only in those extreme cases where the lack of counsel results in fundamental
unfairness will the district court's decision be overturned." *Id.* (quotation
omitted).

We conclude that the district court did not abuse its discretion in denying
Mr. Jones's motions for appointment of counsel. Specifically, Mr. Jones was able
to coherently recount the basis of his claims before the district court and to
advance those claims within the general confines of the Federal Rules of Civil
Procedure. Further, as we explain below regarding the merits of Mr. Jones's
claims, there was little likelihood that appointed counsel could have achieved a
different outcome. Consequently, there was no fundamental unfairness in the
district court requiring Mr. Jones to proceed pro se.

## II. SUMMARY JUDGMENT

### A. Standards of Review

In dismissing Mr. Jones's lawsuit, the district court cited Fed. R. Civ. P.
12(b)(6), but relied on evidence outside the complaint—evidence that was
presented in the government's motion to dismiss or for summary judgment. In
general, "if a party submits, and the district court considers, materials outside the
pleadings," the matter must be resolved under summary-judgment principles,
rather than under Rule 12. *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir.
1999); *see also* Fed. R. Civ. P. 12(d).

Nevertheless, if a party is not prejudiced by the district court's failure to apply the correct legal standard, "the court of appeals should proceed with the appeal, relying upon summary judgment standards, without remanding." *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 713 (10th Cir. 2005). Because the government's motion clearly indicated that it sought summary judgment as an alternative to a Rule 12(b)(6) dismissal, and because Mr. Jones responded with his own motion for summary judgment, we conclude that Mr. Jones was not prejudiced by the district court's failure to apply the correct legal standard. Accordingly, we review the district court's order as one granting summary judgment.

Our review of a summary-judgment order is de novo. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Byers*, 150 F.3d at 1274.

## B. The Federal Tort Claims Act (FTCA)

Under the FTCA, the United States is liable for an employee's negligence "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission

occurred." 28 U.S.C. § 1346(b)(1). Thus, "[t]o determine the liability of the federal government under the FTCA, it is necessary to apply the law of the place where the alleged negligence occurred." *Ewell v. United States*, 776 F.2d 246, 248 (10th Cir. 1985). But under 18 U.S.C. § 4042(a)(2), the Federal Bureau of Prisons has an independent duty to "provide for the safekeeping, care, and subsistence" of persons in its custody. Courts have described the duty as requiring the government to exercise "ordinary diligence to keep prisoners safe and free from harm." *See, e.g.*, *Jones v. United States*, 534 F.2d 53, 54 (5th Cir. 1976); *cf. Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008) (describing § 4042's reach in terms of reasonable care). And the Supreme Court has stated in an FTCA case that § 4042 supercedes "inconsistent state rule[s]." *United States v. Muniz*, 374 U.S. 150, 164-165 (1963).

In giving § 4042 primacy, the Supreme Court "avoided making an important part of a federal prisoner's legal rights depend upon the extraneous criteria which send him to federal prison in one state rather than another." The Supreme Court, 1962 Term, 77 Harv. L. Rev. 134, 135 (1963). But in doing so, it created a potential for conflict in FTCA cases brought by federal prisoners when state tort law provides a duty of care that is inconsistent with § 4042.

The instant case demonstrates such a conflict in regard to Mr. Jones's allegation that the prison maintained the basketball court in an unsafe condition. Under the Kansas Tort Claims Act (KTCA), which governs negligence claims

-7-

brought against correctional facilities, *see Cupples v. State*, 861 P.2d 1360, 1367-72 (Kan. Ct. App. 1993), "any claim for injuries resulting from the use of any public property . . . for recreational purposes" requires a showing of "gross and wanton negligence." Kan. Stat. Ann. § 75-6104(o).[3] This is a lower standard of care than § 4042's ordinary negligence standard.

The Fifth Circuit, when confronted with a similar conflict in the standards of care prescribed by state law and § 4042, has avoided resolving the conflict where "the same result would be reached under [State law] or § 4042's higher ordinary-care standard." *Massay v. Federal Correctional Institution*, 243 F. App'x 871, 873 (5th Cir. 2007) (unpublished). We can do the same in this case. Accordingly, we will apply Kansas's ordinary negligence standard of care, which is identical to the standard prescribed by § 4042.

In general, a landowner must exercise reasonable care to keep the property safe for those lawfully present. *See Herrell v. Nat'l Beef Packing Co.,* 202 P.3d 691, 696 (Kan. App. 2009). And when a plaintiff alleges injury from a dangerous condition on the property, the plaintiff "must show that the defendant had actual

---

[3]     The district court relied on the Kansas Recreational Use Statute (KRUS), which makes a landowner liable when a member of the public is engaged in a free recreational activity and is injured due to the landowner's "willful or malicious failure to guard or warn against a dangerous condition." Kan. Stat. Ann. § 58-3206 (2005). We question how the KRUS would apply in the prison setting, given that the KRUS governs property made "available *to the public* for recreational purposes." *Id.* § 58-3203 (2005) (emphasis added). It would not appear that a prison's basketball court is available for use by the public.

knowledge of the condition or that the condition had existed for such a length of time that in the exercise of ordinary care the landowner should have known about it." *D.W. v. Bliss*, 112 P.3d 232, 241 (Kan. 2005) (quotation omitted). Here, the government submitted affidavits from Leavenworth's safety manager and recreation supervisor detailing the regular inspection routine for the basketball court and the condition of the basketball court. According to those officials, they had not been notified of a "fissure" or other hazard on the basketball court and their regular inspections did not reveal any hazard around the time of Mr. Jones's injury. Moreover, Mr. Jones's medical grievance submitted shortly after the injury states that he was hurt when he landed on another inmate's leg, rather than by any condition of the basketball court. Thus, summary judgment in the government's favor was appropriate as to Mr. Jones's negligence claim.

Mr. Jones's medical malpractice claim is equally flawed. "In order to prevail in a medical malpractice action in Kansas, a plaintiff must prove the following three elements: (1) that a duty was owed by the physician to the patient; (2) that the duty was breached; and (3) that a causal connection existed between the breached duty and the injury sustained by the patient." *Heany v. Nibbelink*, 932 P.2d 1046, 1048 (Kan. App. 1997) (quotation omitted). While § 4042 supplies the prison's duty to provide reasonable medical care to Mr. Jones, *see Barron v. Keohane*, 216 F.3d 692, 693 (8th Cir. 2000), he has provided nothing establishing that medical personnel breached acceptable medical

standards in caring for his injury and that such a breach caused the harm he alleges. A breach of the standard of care "is never presumed, and may not be inferred merely from a lack of success or an adverse result from treatment." *Hare v. Wendler*, 949 P.2d 1141, 1146 (Kan. 1997) (quotation omitted). Further, expert testimony is ordinarily required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff harm. *Id.*

The evidence in the record indicates that Mr. Jones received ample and prompt pre-operative and post-operative care. Further, it appears that his ankle surgery was successful and that his ankle is "solid" enough that he has resumed playing basketball. ROA, Vol. 1, Part 2, Doc. 28-2 at 23. And to the extent his malpractice claim targets independent medical contractors, like the orthopedic surgeon who operated on his ankle, the FTCA is inapplicable. *See Tsosie v. United States*, 452 F.3d 1161, 1163-64 (10th Cir. 2006). Thus, summary judgment in the government's favor was appropriate on Mr. Jones's medical malpractice claim.

### III.  THE MOTION FOR RECONSIDERATION

The district court determined that Mr. Jones's notice of appeal divested it of jurisdiction to reconsider the order granting summary judgment. We review de novo a district court's determination that it lacks jurisdiction. *See June v. Union Carbide Corp.*, 577 F.3d 1234, 1238 (10th Cir. 2009).

-10-

Generally speaking, a timely notice of appeal divests the district court of jurisdiction. *Warren v. American Bankers Ins. of Florida*, 507 F.3d 1239, 1242 (10th Cir. 2007). But a motion for reconsideration of the district court's judgment, filed within ten days of the judgment's entry, postpones the notice of appeal's effect until the motion is resolved. Fed. R. App. P. 4(a)(4). Here, the judgment was entered on March 10, and Mr. Jones filed the motion on March 30—six days late, *see* Fed. R. Civ. P. 6(a)(2) (excluding week-ends and holidays when the prescribed period is less than eleven days).

Although Mr. Jones sent the motion using the prison's "First Class U.S. Mailing procedures" on March 23, before the ten-day period expired, ROA, Vol. 1, Part 2, Doc. 44 at 3, that submission did not satisfy the prison mailbox rule. Under that rule, a prisoner's motion is deemed filed when the prisoner gives it to prison officials for mailing, and either (1) specifically alleges that he used the prison's "legal mail system"; or (2) "submits a notarized statement or a declaration under penalty of perjury of the date on which the documents were given to prison authorities and attests that postage was prepaid." *Price v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005). Mr. Jones failed to follow either approach. *Cf. id.* (holding that prisoner's bare allegation "that he used 'the institutional mails' was insufficient to connote use of the 'legal mail system'"). Consequently,

-11-

his motion for reconsideration was untimely,[4] and his simultaneously filed notice of appeal divested the district court of jurisdiction.

<u>CONCLUSION</u>

The district court's judgment, orders denying appointment of trial counsel, and order denying post-judgment motions are AFFIRMED. Mr. Jones's motions for appointment of appellate counsel and for a temporary exemption from paying the filing fee are DENIED, and we remind him of his continuing obligation to make partial payments until his filing fee has been paid in full.

Entered for the Court

Deanell Reece Tacha
Circuit Judge

---

[4]    A district court may not extend the time for filing a motion for reconsideration. *See* Fed. R. Civ. P. 6(b)(2) (providing that "[a] court must not extend the time to act under" Rules 59(e) and 60(b)).

-12-