**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID E. HENRY, M.D.,
*Plaintiff-Appellant*,

v.

ADVENTIST HEALTH CASTLE
MEDICAL CENTER, DBA Castle
Medical Center,
*Defendant-Appellee.*

No. 19-16010

D.C. No.
1:18-cv-00046-
JAO-KJM

OPINION

Appeal from the United States District Court
for the District of Hawaii
Jill A. Otake, District Judge, Presiding

Argued and Submitted July 9, 2020
Honolulu, Hawaii

Filed August 14, 2020

Before: John B. Owens, Michelle T. Friedland,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge Owens

**SUMMARY**[*]

**Employment Discrimination**

The panel affirmed the district court's grant of summary judgment in favor of the defendant in a Title VII action brought by a surgeon who provided on-call service in a hospital emergency department.

The panel held that Title VII did not protect the surgeon because he was an independent contractor, not an employee of defendant Adventist Health Castle Medical Center. The panel considered the surgeon's payment arrangement, his limited obligations to Castle, and his description as an independent contractor in the parties' contracts. The panel concluded that other factors, including the surgeon's high skill level, Castle's provision of assistants and medical equipment, and its mandatory professional standards, did not weigh strongly in the surgeon's favor.

**COUNSEL**

John Winnicki (argued) and Dennis W. King, Deeley King Pang & Van Etten, Honolulu, Hawaii, for Plaintiff-Appellant.

Brian W. Tilker (argued), J. George Hetherington, and Erik A. Rask, Torkildson Katz Hetherington Harris & Knorek, Honolulu, Hawaii, for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

OWENS, Circuit Judge:

Dr. David Henry appeals from the adverse grant of summary judgment against his Title VII lawsuit. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

### A.  Henry and His Relationship with Castle[1]

Henry, a white male, is a board-certified general and bariatric surgeon licensed to practice medicine in Hawaii. He joined the staff of Adventist Health Castle Medical Center ("Castle") in 2015, and, with clinical privileges, performed surgeries at Castle's facility located in Kailua, Hawaii.

Henry entered into two agreements with Castle: (1) the Physician Recruitment Agreement ("Recruitment Agreement"), and (2) the Emergency Department Call Coverage and Uninsured Patient Services Agreement ("On-Call Agreement"). The Recruitment Agreement provided that Henry would operate a full-time private practice of medicine. The On-Call Agreement obligated Henry to five

---

[1] The facts summarized below are undisputed. Henry supports his arguments on appeal with facts from his post-judgment declaration that were not part of the summary judgment record. In reviewing orders granting summary judgment, we limit our review to the facts before the district court at the time it made its ruling. *See Kirshner v. Uniden Corp.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988) (explaining that documents submitted to the district court after it made the ruling challenged on appeal are excluded from the record). Therefore, we do not consider Henry's post-judgment declaration in assessing whether summary judgment was appropriate.

days of on-call service in Castle's emergency department per month.  Both agreements set forth that Henry "shall at all times be an independent contractor."

While on call, Henry was not required to be present at Castle's facility unless an emergency intervention was needed.  If he arranged backup emergency coverage, he could use that time to perform elective surgeries instead. Henry also leased space from Castle for elective surgeries on non-Castle patients.  Henry was not required to refer his general surgery patients to Castle.  In addition to his bariatric surgeries at Castle, he undertook non-bariatric surgeries at a competing hospital, where he also had clinical privileges.

Castle decided which surgical assistants would support Henry, supervised their performance and pay, and determined which medical record system would be used for care provided at Castle.  It also required Henry to comply with its "Code of Conduct," "Corporate Compliance Program," and other regulations and bylaws.

Castle paid Henry $100 per 24-hour on-call shift if there was no emergency intervention, or $500 for each emergency that he handled.  It issued Henry a 1099 tax form (an IRS form for independent contractor income)—never a W-2 (an IRS form for employee income).  He reported his Castle earnings (which were only 10% of his 2016 income) on a Form 1040, which self-employed individuals use. Castle did not provide him any employee benefits, such as medical insurance or retirement.

## B.  Procedural History

Henry complained of discrimination at Castle, which initiated a review of his past surgeries.  This assessment led to his precautionary suspension, and, later, Castle's Medical

Executive Committee recommended that Henry's clinical privileges be suspended until he completed additional training and demonstrated competency in various areas of concern.  After an internal appellate process upheld the suspension, Henry filed suit in February 2018 for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII"), for racial discrimination and retaliation.[2]

Castle moved for summary judgment, arguing that because Henry was an independent contractor, and not an employee, he did not enjoy Title VII's protections.  *See Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) ("Title VII protects employees, but does not protect independent contractors.").  After oral argument, the district court granted that motion.  It highlighted how Henry was paid, his lack of typical employee benefits, and his tax treatment, as well as how both contracts characterized his status as an independent contractor and his ability to work at competing hospitals.  While some factors weighed in Henry's favor—including how Castle handled the management of assistants and the high skill level and tools required to perform his surgeries—most of the evidence pointed towards Henry being an independent contractor.

---

[2] Henry was "pro se" until local counsel appeared on his behalf the day before the summary judgment hearing was initially scheduled.  But it soon became clear that separate mainland counsel (who was not admitted in Hawaii) had been, at least to some degree, ghostwriting Henry's submissions since the complaint's filing.

## II.  DISCUSSION

### A.  Standard of Review

We review de novo a district court's decision to grant summary judgment.  *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 773 (9th Cir. 2018).  Summary judgment is appropriate only if "there is no genuine dispute of material fact" after "viewing the evidence in the light most favorable to the nonmoving party."  *Id*. (citation omitted).  Whether an individual is an employee under Title VII is a question of law, assuming the material facts are undisputed.  *See Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983), *overruled on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985); *see also Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 261 (4th Cir. 1997).

### B.  Henry Was Not an Employee of Castle

To determine if an individual is an employee under Title VII, we evaluate "the hiring party's right to control the manner and means by which the product is accomplished." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992) (citation omitted); *see also Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010).[3]  A non-exhaustive list of factors we consider include:

---

[3] Henry appears to argue the economic realities test should apply. We explained in *Murray* that there is "no functional difference" between the economic realities test and the Supreme Court's common-law test in *Darden*, and to the extent there is one, the *Darden* analysis controls. 613 F.3d at 945.  Thus, we limit our discussion to the *Darden* formulation.

- the skill required;

- the source of the instrumentalities and tools;

- the location of the work;

- the duration of the relationship between the parties;

- whether the hiring party has the right to assign additional projects to the hired party;

- the extent of the hired party's discretion over when and how long to work;

- the method of payment;

- the hired party's role in hiring and paying assistants;

- whether the work is part of the regular business of the hiring party;

- whether the hiring party is in business;

- the provision of employee benefits; and

- the tax treatment of the hired party.

*Darden*, 503 U.S. at 323–24 (citation omitted); *see also* Restatement (Second) of Agency § 220 (1958).  These factors confirm what the district court concluded—Henry was an independent contractor, not an employee.

First, we follow the money.  Castle paid Henry for his on-call time—$100 per shift, or $500 per emergency intervention—which only accounted for 10% of his earnings.  This arrangement is emblematic of an independent contractor relationship.  *See Cilecek*, 115 F.3d at 261 (concluding that physician was an independent contractor in part because physician's hours varied, and he did not receive a uniform salary).  Henry did not receive any typical employee benefits from Castle.  *See id.* (holding that doctor's lack of employee benefits weighed in favor of independent contractor status); *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 493 (7th Cir. 1996) (same).  Henry and Castle reported Henry's earnings to the IRS not as if Henry were a Castle employee, but as if he were an independent contractor.  Castle issued him a 1099 tax form, not a W-2.  *See Shah v. Deaconess Hosp.*, 355 F.3d 496, 500 (6th Cir. 2004) (holding that doctor was an independent contractor in part because he never received a W-2); *Cilecek*, 115 F.3d at 261 (holding that doctor was an independent contractor in part because he was taxed like one).  And Henry reported his Castle earnings on a Form 1040 for self-employed individuals.  *See Murray*, 613 F.3d at 946 (concluding that insurance agent who reported as self-employed to the IRS was an independent contractor); *Alexander*, 101 F.3d at 493 (concluding the same for doctor). We agree with our sister circuits' assessment of these factors.  Henry was paid, taxed, and received benefits like an independent contractor, and these factors weigh in favor of treating him as one.

Second, Henry's obligations to Castle were limited, providing him the freedom to run his own private practice. This arrangement is inconsistent with employee status. Henry was required to be on call in Castle's emergency department only five days per month, and under the On-Call

Agreement, Castle was required to prioritize Henry's obligations when scheduling him.  Henry was free to be elsewhere during his on-call shifts unless an emergency arose, and he could perform elective surgeries during his shifts if he coordinated backup coverage—both of which are consistent with independent contractor status.  *See Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998) (determining insurance agent was an independent contractor, as he "was free to operate his business as he saw fit without day-to-day intrusions"); *see also Murray*, 613 F.3d at 946 (insurance agent, like in *Barnhart*, was free to "decide[] when and where to work, . . . maintain[ed] her own office, where she [paid] rent," and "schedule[d] her own time off"). Henry also leased Castle space for elective surgeries on his own patients, performed general surgeries at a competing hospital, and could refer his patients to any hospital of his choosing.  Employees normally do not have this level of work freedom.  *See Shah*, 355 F.3d at 500 (concluding doctor was an independent contractor where he treated his own patients, engaged with other hospitals, and did not have to accept patients referred to him from the hospital); *Cilecek*, 115 F.3d at 261 ("Cilecek had freedom to do other work, not only for himself but also for other health care facilities[.]"). In sum, Henry's duties do not exhibit the level of control present in employment relationships, but rather evidence Henry's professional independence from Castle in treating his patients.  *See Alexander*, 101 F.3d at 493 (concluding anesthesiologist was an independent contractor "because the details concerning performance of the work remained essentially within the [doctor's] control" (citation omitted)).

Third, the contracts between Castle and Henry described him as an independent contractor, a fact that our court and others have found significant.  *See Barnhart*, 141 F.3d at 1313 ("The contract Barnhart signed contained clear

language stating that Barnhart would be considered an independent contractor, not an employee."); *Cilecek*, 115 F.3d at 261 ("The parties expressly set out from the beginning to create an independent contractor relationship[.]").

In arguing that he was an employee, Henry cites the high skill level that his surgeries require, Castle's provision of assistants and medical equipment, and Castle's mandatory professional standards as factors weighing strongly in his favor. In certain lines of work, these facts might be persuasive. Yet, as our sister circuits have observed, in the physician-hospital context, "[t]he level of skill required, location of the work, and source of equipment and staff are not indicative of employee status because all hospital medical staff are skilled and must work inside the hospital using its equipment." *Alexander v. Avera St. Luke's Hosp.*, 768 F.3d 756, 763 (8th Cir. 2014). As the Tenth Circuit explained, "[w]hen a physician shows up to work in today's world—either as an independent contractor or a full-fledged employee—he no longer is likely to carry all relevant medical instruments in a black satchel." *Tsosie v. United States*, 452 F.3d 1161, 1164 (10th Cir. 2006). "Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service." *Id.*[4]

It is also no surprise that Castle subjected Henry to regulations, as hospitals are responsible for maintaining a

---

[4] *See also Diggs v. Harris Hosp.-Methodist, Inc.*, 847 F.2d 270, 273 (5th Cir. 1988) (concluding physician was an independent contractor because "[w]hile the hospital supplies the tools, staff and equipment utilized by Diggs in delivering medical care at the hospital, and while it imposes standards upon those permitted to hold staff privileges, the hospital does not direct the manner or means by which Diggs renders medical care").

certain standard of care and safety for their patients.  As the Fourth Circuit has recognized, "[i]f the hospitals did not insist on such details in the performance of professional services by doctors at their facilities, they would be exposing themselves to recognized professional liability."  *Cilecek*, 115 F.3d at 262; *see also Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 344 (8th Cir. 2006) (noting hospital "could take reasonable steps to ensure patient safety and avoid professional liability" and that such steps did not turn all affected doctors into employees).  Thus, rather than evidencing a right to control the manner and means of Henry's practice, the regulations reflect a shared "professional responsibility to cooperate with the hospitals to maintain standards of patient care, to keep appropriate records, and to follow established procedures."  *Cilecek*, 115 F.3d at 262.  They are therefore consistent with an independent contractor relationship.

Henry heavily relies on *Mitchell v. Frank R. Howard Memorial Hospital*, in which this court held that a physician had sufficiently pled a Title VII claim.  853 F.2d 762, 766–67 (9th Cir. 1988).  Notably, *Mitchell* was decided on a motion to dismiss under the now abrogated "no set of facts" standard.  *Id.* at 766 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Further, the physician alleged that she treated the hospital's patients (not her own), she did not work at any other hospital, and the hospital paid her 40% of the department's gross receipts—which was enough to support the claim at the motion to dismiss stage that the hospital controlled the manner and means of her performance.  *Id.* at 766–67.  Unlike in *Mitchell*, Henry treated his own patients in addition to Castle's patients, had clinical privileges at another hospital, and only received 10% of his

compensation from Castle. Thus, *Mitchell*, a very different case, does not help Henry.

Henry also points to *Salamon v. Our Lady of Victory Hospital*, in which the hospital intensively reviewed nearly all the physician's cases on a continuous basis over several years as part of an escalating course of performance reviews. 514 F.3d 217, 230–31 (2d Cir. 2008). Not only did the hospital monitor her patient treatment outcomes, it mandated the performance and timing of certain procedures, dictated which medicines to prescribe, and recommended practice changes based on financial impact. *Id.* While the Second Circuit noted that hospital peer review programs often "do not constitute exercises of control over the manner and means of physician practice," it held that "a reasonable fact-finder could conclude from the present record that the quality assurance standards extended beyond mere health and safety concerns or ensuring [the physician's] qualifications." *Id.* at 231.

Here, Castle did not even approach the level of micromanagement detailed in *Salamon*. For example, while Henry explained that Castle controlled how he inserted chest tubes and when to perform laparoscopic surgery, those standards relate to "health and safety concerns." *Id.* He fails to identify anything in his case "beyond mere health and safety concerns," such as the considerations that drove the decision in *Salamon*. *Id.* Thus, unlike in *Salamon*, Henry did not create a genuine issue of material fact as to whether the peer review process created an employment relationship.

On balance, the undisputed facts clearly show that Henry was Castle's independent contractor and thus not entitled to

Title VII protections.  The district court properly granted summary judgment.[5]

**AFFIRMED**.

---

[5] Henry raises several other issues on appeal, but each lacks merit. First, the district court did not abuse its discretion in denying Henry's request for a continuance to conduct further discovery and/or supplement the record under Federal Rule of Civil Procedure 56(d) and (e), as Henry failed to "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *SEC v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 245 (2019) (internal quotation marks and citation omitted). Second, the district court did not abuse its discretion in denying Henry's motion for reconsideration under Federal Rule of Civil Procedure 59(e) because the motion and Henry's belated declaration improperly attempted to introduce additional evidence that "could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  Lastly, the district court did not abuse its discretion in denying Henry's motion to amend his complaint to add new claims: "once judgment has been entered in a case, a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996).